AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☒ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 1349 -- Conspiracy to Commit Wire Fraud and Bank Fraud; 18 U.S.C. § 1349 - Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1343 (Wire Fraud); 18 U.S.C. § 1344(1), (2) – Bank Fraud; 18 U.S.C. § 1014 - False Statement to A Bank; 18 U.S.C. § 1028A - Aggravated Identity Theft; 18 U.S.C. § 2232(a) (Destruction or Removal of Property to Prevent Search or Seizure); 18 U.S.C. § 2 – Aiding and Abetting: 18

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   see additional sheet

**Name of District Court, and/or Judge/Magistrate Location**

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

**DEFENDANT - U.S**

▶ ATTILA COLAR, a/k/a DAHOOD SHARIFF BEY, a/k/a SHARIEFF DAHOOD BEY, a/k/a SHARIEFF PASHA, and a/k/

DISTRICT COURT NUMBER

21-CR-163 HSG

**FILED**

Jan 26 2022

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY   ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

} MAGISTRATE CASE NO.

20-xr-91311

Name and Office of Person Furnishing Information on this form    Stephanie M. Hinds

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    Barbara J. Valliere

**IS NOT IN CUS**

1) ☐ Has not been a[rrested]. If not detained g[ive date any prior] summons was s[erved]

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)

Northern District of California

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

} ☐ Federal   ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No   } If "Yes" give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:

☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT

If Summons, complete following:

☐ Arraignment   ☐ Initial Appearance

Defendant Address:

Comments:

Bail Amount: _____

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

**Attachment 1 to Penalty Sheet for Attila Colar**
**21-CR-163 HSG**

COUNT 1:  18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

Maximum 20 years' imprisonment; maximum $1,000,000 fine; maximum 3 years supervised release; $100 special assessment

COUNTS 2-9, 16-25: 18 U.S.C. § 1343 & 2 (Wire Fraud and Aiding and Abetting)

Maximum 20 years' imprisonment; maximum $1,000,000 fine; maximum 3 years supervised release; $100 special assessment

COUNTS 10-12, 26-30:  18 U.S.C. § 1028A (Aggravated Identity Theft)

Mandatory minimum consecutive 2-year sentence; 1 year of supervised release

COUNT 13:  18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud and Wire Fraud)

Maximum 30 years' imprisonment; maximum $250,000 fine; maximum 3 years supervised release; $100 special assessment

COUNTS 14 & 15:  18 U.S.C. § 1344(1), (2) & 2 (Bank Fraud and Aiding and Abetting)

Maximum 30 years' imprisonment; maximum 3 years' supervised release; maximum $1,000,000 fine; $100 special assessment

COUNTS 31 & 32:  18 U.S.C. § 1014 (False Statement to a Bank or Other Federally Insured Institution)

Maximum 20 years' imprisonment; maximum $250,000 fine; maximum 3  years supervised release; $100 special assessment

COUNT 33:  18 U.S.C. § 2232(a) (Destruction or Removal of Property to Prevent Search or Seizure)

Maximum 5 years' imprisonment; maximum $250,000 fine; maximum 3   years supervised release; $100 special assessment

ADDITIONAL SENTENCING ALLEGATION:  18 U.S.C. § 3147 (Commission of an Offense While on Pretrial Release)

Maximum 10 years' imprisonment

# United States District

## FOR THE
## NORTHERN DISTRICT OF CALIF

## VENUE: OAKLAND

FILED

Jan 26 2022

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES OF AMERICA,

V.

ATTILA COLAR, a/k/a DAHOOD SHARIFF BEY, a/k/a
SHARIEFF DAHOOD BEY, a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and a/k/a GEORGI PETRAKOV,

DEFENDANT(S).

# SUPERSEDING INDICTMENT

18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;
18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud and Bank Fraud;
18 U.S.C. § 1344(1), (2) – Bank Fraud;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1028A – Aggravated Identity Theft;
18 U.S.C. § 1014 – False Statement to a Bank or Other Federally Insured Institution;
18 U.S.C. § 2232(a) – Destruction or Removal of Property to Prevent Search or Seizure;
18 U.S.C. § 3147 – Commission of Crime While on Release;
18 U.S.C. § 2 – Aiding and Abetting;
18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Forfeiture Allegation

A true bill.

/s/ Foreperson of the Grand Jury

Foreman

Filed in open court this 25th_____ day of

January, 2022_____.

Clerk

Magistrate Judge Sallie Kim

Bail, $ No Process

STEPHANIE M. HINDS (CABN 154284)
United States Attorney

FILED

Jan 26 2022

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>ATTILA COLAR, a/k/a DAHOOD SHARIFF BEY, a/k/a SHARIEFF DAHOOD BEY, a/k/a SHARIEFF PASHA, a/k/a DAVID LEE, and a/k/a GEORGI PETRAKOV,<br><br>　　　Defendant. | CASE NO.  21-CR-163  HSG<br><br>VIOLATIONS:<br>18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;<br>18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud and Bank Fraud;<br>18 U.S.C. § 1344(1), (2) – Bank Fraud;<br>18 U.S.C. § 1343 – Wire Fraud;<br>18 U.S.C. § 1028A – Aggravated Identity Theft;<br>18 U.S.C. § 1014 – False Statement to a Bank or Other Federally Insured Institution;<br>18 U.S.C. § 2232(a) – Destruction or Removal of Property to Prevent Search or Seizure;<br>18 U.S.C. § 3147 – Commission of Crime While on Release;<br>18 U.S.C. § 2 – Aiding and Abetting;<br>18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Forfeiture Allegation<br><br>OAKLAND VENUE |

S U P E R S E D I N G   I N D I C T M E N T

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Superseding Indictment:

The Defendant

1.　　Defendant ATTILA COLAR, a/k/a DAHOOD SHARIEFF BEY, a/k/a SHARIEFF

SUPERSEDING INDICTMENT

DAHOOD BEY, a/k/a SHARIEFF PASHA, a/k/a DAVID LEE, and a/k/a GEORGI PETRAKOV, resided in Hercules and Richmond, California.

2.      In 2015, COLAR (under the name DAHOOD BEY) pleaded no contest and was convicted of fourteen felony counts of California Penal Code § 115 (filing a false document), three felony counts of California Revenue and Tax Code § 19706 (tax evasion), three felony counts of California Penal Code § 487(a) (grand theft), and one felony count of California Penal Code § 182(a)(1) (conspiracy to commit a crime).

3.      On December 12, 2018, COLAR and coconspirator #1, posing as identity theft victims who will be referred to herein by their initials G.P. and S.C., rented a three-bedroom single-family dwelling in Hercules, California.  Neither the real G.P. nor the real S.C. were involved in renting the property. The rental application falsely stated that S.C. was employed as a billing representative by an organization called All Hands on Deck.

All Hands on Deck

4.      All Hands on Deck (AHOD) was a 501(c)(3) nonprofit organization incorporated in Delaware on or about March 25, 2019, and registered with the California Secretary of State on or about May 21, 2019.  Per its Articles of Incorporation, AHOD provided "housing to men getting out of prison, food bank services, life and work skills, trainings, resiliency treatment services, prenatal life skills, and a variety of necessary know hows [sic] to survive in today's society."  The Bylaws of All Hands on Deck adopted on March 25, 2019, listed both COLAR and his alias DAVID LEE as "Incorporators."  The registration statement filed with the California Secretary of State regarding AHOD listed as AHOD's business address the address in Hercules, California, where COLAR resided.  On March 28, 2019, the Internal Revenue Service (IRS) assigned AHOD Employer Identification Number (EIN) 83-4171838. AHOD received an IRS nonprofit status ruling in February of 2020.

5.      As early as November 27, 2019, COLAR held himself out as AHOD's Chief Executive Officer (CEO), Treasurer, and Secretary.  In January of 2021, documents filed with the California Secretary of State stated that L.L. was then the CEO of AHOD.

6.      On or about November 27, 2019, as its CEO, Treasurer, and Secretary, COLAR opened a business bank account for AHOD at Mechanics Bank, with an account number ending in -8345.

SUPERSEDING INDICTMENT          2

COLAR was the sole signatory on that account.

7.    On or about May 19, 2020, COLAR opened a business checking account for AHOD at US Bank, with an account number ending in -0770.  COLAR was the sole signatory on that account.

Entities Doing Business with AHOD

8.    GEO Reentry Services, LLC (GEO Reentry), provided treatment and supervision programs for adult probationers, parolees, and pretrial defendants in residential, in-custody, and non-residential reentry centers.  GEO Reentry was a part of its parent company, The GEO Group, Inc., which is headquartered in Boca Raton, Florida, and is a publicly traded real estate investment trust that invests in private prisons and mental health facilities in North America, Australia, South Africa, and the United Kingdom.  GEO Corrections is also a part of The GEO Group, Inc.

9.    Specialized Treatment for Optimized Programming (STOP) was a program established and funded by the California Department of Corrections and Rehabilitation (CDCR) to connect parolees with community housing or treatment services.  CDCR referred parolees to STOP locations upon release.  In addition to reentry housing, STOP services were to include, at a minimum, substance use disorder treatment; detoxification services; assistance with enrollment to health care services; general health education services; motivational incentives; anger management; criminal thinking therapy; life skills programs; community and family reunification services; employment and educational services; individual, family, and group counseling; faith-based services; recovery and reentry housing; and emergency housing services.  GEO Reentry contracted with CDCR to provide STOP services.

10.    CDCR Day Reporting Centers (DRCs) offered a comprehensive service delivery program designed to address the needs of parolees.  GEO Reentry contracted with CDCR to provide DRC services.

The Paycheck Protection Program

11.    The Coronavirus Aid, Relief, and Economic Security (CARES) Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.  As part of the CARES Act, Congress announced the Paycheck Protection Program (PPP), and in April of 2020, authorized over $300 billion in additional PPP funding.  The purpose of the PPP was the authorization of

SUPERSEDING INDICTMENT                3

United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses.

12. The PPP was administered by the U.S. Small Business Administration (SBA). The SBA was a cabinet-level federal agency that provided counseling, capital, and contracting expertise for small businesses.

13. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application ("SBA Form 2483"), which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certifications to be eligible to obtain the PPP loan. One such certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." The applicant (through its authorized representative) was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may pursue federal criminal charges." In the PPP loan application, the applicant was required to state, among other things, its: (1) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses.

14. From at least in or around April 2020 to on or about June 10, 2020, Question Six on SBA Form 2483 read: "Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgement)?" Question Six contained the option to check either "Yes" or "No" in response.

15. In completing a PPP loan application, the applicant was required to place their initials on a line next to the statement:

> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

SUPERSEDING INDICTMENT          4

16.     A PPP loan application was submitted to and processed by a participating lending financial institution.  If a PPP loan application was approved by the participating financial institution, that institution funded the PPP loan using its own monies.  The loan was 100 percent guaranteed by the SBA.

17.     Information from the application was transmitted by the lender to the SBA as the loan was processed.

18.     PPP loan proceeds were required to be used by the business on permissible expenses— payroll costs, interest on mortgages, rent, and utilities.  Under the terms of the CARES Act, the interest and principal on a PPP loan would be forgiven if the business spent the loan proceeds on these expense items within a designated period and used at least 60 percent of the PPP loan proceeds on payroll expenses.

Financial Institutions and Other Companies

19.     Fountainhead Commercial Capital (Fountainhead) was a non-bank direct commercial lender headquartered outside of Orlando, Florida, that specialized in small business loans.

20.     Mechanics Bank was a financial institution, as that term is defined in Title 18, United States Code, Section 20, headquartered in Walnut Creek, California, the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC).

21.     Celtic Bank was a financial institution, as that term is defined in Title 18, United States Code, Section 20, headquartered in Salt Lake City, Utah, the deposits of which were insured by the FDIC.

22.     Liberty Small Business Finance (Liberty SBF) was a commercial real estate finance company, headquartered in Philadelphia, Pennsylvania, that provided loan origination, loan servicing, and lender services.

23.     Lendio was a third-party lending partner that connected lenders and small business in search of loans.  It was headquartered in Lehi, Utah.

24.     Kabbage, Inc., was an online financial technology company based in Atlanta, Georgia, that provided funding directly to small businesses and consumers through an automated lending platform.

SUPERSEDING INDICTMENT                    5

25. Radius Bank was a financial institution, as that term is defined in Title 18, United States Code, Section 20, headquartered in Boston, Massachusetts, the deposits of which were insured by the FDIC. Radius Bank was acquired by LendingClub Bank N.A. on February 1, 2021.

26. Seattle Bank was a financial institution, as that term is defined in Title 18, United States Code, Section 20, headquartered in Seattle, Washington, the deposits of which were insured by the FDIC.

27. Fundera was an online marketplace that worked to help match small business owners with business loans. It was headquartered in New York, New York.

28. Cross River Bank was a financial institution, as that term is defined in Title 18, United States Code, Section 20, headquartered in Teaneck, New Jersey, the deposits of which were insured by the FDIC.

29. Bankers Healthcare Group was a privately owned company that provided financing and credit cards to healthcare professionals. It was headquartered in Davie, Florida.

30. DocuSign, Inc. (DocuSign), was an American company headquartered in San Francisco, California, that offered remote document signature and management services.

PPP Loan Applicants

31. As alleged above, AHOD was a Delaware corporation that was registered in California.

32. Oversight Security, Inc. (Oversight), was for-profit organization incorporated in Delaware on or about August 13, 2014. Its business address was in San Rafael, California.

33. The Family Investment Group Inc. (FIG) was a for-profit organization incorporated in Delaware on or about July 25, 1996. Its business address was in Walnut Creek, California.

COUNT ONE: 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

34. The factual allegations in Paragraphs 1 through 10 are re-alleged and incorporated as if fully set forth here.

35. Beginning no later than in or around December of 2018 and continuing until at least in or around December of 2020, in the Northern District of California, and elsewhere, the defendant ATTILA COLAR knowingly conspired with at least one other person as well as with others known and unknown to the Grand Jury to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

SUPERSEDING INDICTMENT          6

36.    The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:   Beginning on a date unknown, but no later than December of 2018, and continuing until a date unknown, but at least December of 2020, COLAR knowingly devised, intended to devise, and carried out a scheme and artifice to defraud GEO Reentry as to a material matter, and to obtain money and property from GEO Reentry by means of materially false and fraudulent pretenses, representations, and promises.

As part of the conspiracy and scheme to defraud:

37.    In December 2018, COLAR and coconspirator #1 impersonated G.P. and S.C. to enter into a lease to rent a house in Hercules, California.  The fraudulently rented Hercules residence was thereafter used as the business address for AHOD.  As part of the scheme to defraud, COLAR provided the personal identifying information of G.P. and S.C., including a fake tenant screening report, a fake bank statement for a joint checking account for a Nevada bank, and counterfeit driver's licenses.  The tenant screening report for S.C. revealed that she had no criminal record.  The bank statement was fraudulent, in that G.P. and S.C., who are not a couple and who do not know each other, have never held bank accounts in Nevada.

38.    On or about March 25, 2019, COLAR caused AHOD to be incorporated in Delaware as a 501(c)(3) nonprofit organization to provide housing and other services to men getting out of prison. There are four signatures on the articles of incorporation:  one for COLAR (as Attila C. Colar), one for DAVID LEE (a known alias for COLAR), and signatures for two other individuals referred to herein by their initials C.H., and M.T.  On or about May 21, 2019, AHOD filed with the California Secretary of State a Statement and Designation by Foreign Corporation.  C.H., a "corporate officer," purportedly signed the Statement.  The business address listed was the Hercules address fraudulently rented by COLAR (as G.P.) and coconspirator #1 (as S.C.).

39.    On or about June 3, 2019, COLAR and other representatives from AHOD delivered a Request for Qualifications (RFQ) Application to GEO Reentry to obtain a subcontract agreement to provide STOP placement services for eligible individuals at AHOD residential facilities.  In its June 2, 2019, cover letter to the RFQ Application to GEO Reentry, AHOD falsely held itself out to be "a community based, non-profit organization, that provides Sober Living Housing and Residential Drug

SUPERSEDING INDICTMENT                7

and Alcohol Treatment Centers to Recovering Individuals, Parolees, Probationers, Homeless veterans and those with Mental Health Conditions in need of a safe sober place to live and develop."

40.     To qualify for the GEO Reentry subcontract, AHOD was required to submit certain documents, including for example, staffing information, subcontractor rate sheets, and a series of certification documents that included licenses, insurance coverage, and three professional letters of recommendation from other agencies where AHOD provided similar services.  During the summer of 2019, GEO Reentry requested additional documents from AHOD to complete its Application.  In its RFQ Application, AHOD made false statements (including the names and qualifications of its Board of Directors members and the names and qualifications of its independent contractors), provided fabricated fire inspection certificates that contained fake headers, and provided a fabricated letter of recommendation from a Richmond, California, non-profit company.  Colar had met and interacted with the  person who allegedly wrote the  fabricated letter of recommendation, P.S., and thus knew P.S. to be a real person.

41.     In its RFQ Application, AHOD listed Sharrieff Pasha (an alias for COLAR) as the Director and coconspirator #1 as the assistant director.  AHOD also identified six persons as its GEO – STOP 2 Program Staff, including the following who are referred to herein by their initials: V.T., S.W., G.M.A., R.R., B.C., and L.L., and falsely represented that 11 named independent contractors would provide the following services:  a Peer Recovery Coach, two Certified Counselors, a Nurse Practitioner, a Family Counselor, a Detox Specialist, a Program Administrator, an Outreach Coordinator, a Cook/House Keeper, and an Admission Intake Specialist.

42.     On November 1, 2019, GEO Reentry entered into a referral agreement with AHOD to provide STOP services.

43.     After obtaining the STOP subcontract with GEO Reentry, AHOD continued to provide GEO Reentry with fraudulent documents.  Specifically, in order to facilitate CDCR's STOP program, AHOD was required to obtain security clearances for some of its employees.  To obtain these clearances, AHOD was required to submit to CDCR through GEO Reentry Authorization for Security Clearance forms that included the name, date of birth, Social Security number, and driver's license number of the AHOD employees.  The forms also required the employee to provide a complete account

SUPERSEDING INDICTMENT                    8

of their criminal arrest record. In November of 2019, AHOD through COLAR and coconspirator #1 provided GEO Reentry with the following fraudulent Authorization for Security Clearance forms: a form signed by COLAR which falsely stated that he had no criminal history, and forged Authorization forms that contained the personal identifying information of AHOD employees who will be referred to herein by their initials S.W., D.W., and O.C.

44.    On or about February 10, 2020, GEO Reentry entered into a second agreement with AHOD to provide DRCs on behalf of the CDCR. The contract called for AHOD to provide housing and day reporting center services. Among other requirements, the contract called upon AHOD to provide "a quality, clean, healthy, therapeutic, drug and alcohol free sober living environment for a culturally diverse community servicing individuals afflicted with alcohol, substance abuse and mental health disorders," and "assistance for a comprehensive, structured life style for re-entry into society."

45.    Rather than provide a "quality, clean, healthy, therapeutic, drug and alcohol free sober living environment," as director of AHOD, COLAR (a) engaged in verbal and physical abuse of vulnerable AHOD residents; (b) confiscated residents' Social Security and other benefits; (c) stole, misappropriated, or otherwise illegally used residents' names and personal information; and (d) ignored residents' medical needs. Specifically, COLAR used residents' names, signatures, and personal information as part and in furtherance of the conspiracy and scheme to defraud the PPP program described in Paragraphs 57 through 80 below.

46.    During the course of the STOP contract, GEO Reentry paid AHOD a total of approximately $81,188 pursuant to the fraudulently obtained subcontract for housing and other services. During the course of a second GEO Reentry subcontract for housing and other services that relied on the same AHOD RFQs, GEO Reentry paid AHOD a total of $45,764. The total amount paid to AHOD by GEO for both contracts was $126,952.

All in violation of Title 18, United States Code, Section 1349.

COUNTS TWO THROUGH NINE: 18 U.S.C. §§ 1343 & 2 (Wire Fraud and Aiding and Abetting)

47.    The factual allegations in Paragraphs 1 through 46 are re-alleged and incorporated as if fully set forth here.

48.    Beginning no later than December of 2018, and continuing through in or about December

SUPERSEDING INDICTMENT                9

of 2020, in the Northern District of California, and elsewhere, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

did knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud GEO Reentry as to a material matter, and to obtain moneys and property from GEO Reentry by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

Execution of the Scheme

49.     On or about the dates set forth in the separate counts below, in the Northern District of California, and elsewhere, for the purpose of executing the scheme and artifice referred to above, and attempting to do so, the defendant knowingly transmitted and willfully caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds, namely, the following interstate email communications and the following interstate wire transfers of funds, among other things:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|-------|------|------------------------------|
| Two | 6/2/2019 | Email communication between AHOD and GEO Reentry regarding AHOD's submission of an RFQ Application for GEO STOP Reentry Services |
| Three | 11/15/2019 | Email communication from GEO Reentry to AHOD attaching Authorization for Clearance forms for AHOD employees |
| Four | 12/4/2019 | Email communication from AHOD to GEO Group attaching Vendor Application Documents |
| Five | 1/27/2020 | Wire payment for $225 from GEO Corrections to AHOD Mechanics Bank account number ending -8345 |
| Six | 2/28/2020 | Wire payment for $20,044.75 from GEO Corrections to AHOD Mechanics Bank account number ending -8345 |
| Seven | 3/27/2020 | Wire payment for $57,138.65 from GEO Corrections to AHOD Mechanics Bank account number ending -8345 |
| Eight | 4/24/2020 | Wire payment of $3,780 from GEO Corrections to AHOD Mechanics Bank account number ending -8345 |

SUPERSEDING INDICTMENT                    10

| Nine | 6/26/2020 | Wire payment of $4,375 from GEO Corrections to AHOD US Bank account number ending -0770 |
|------|-----------|---|

Each in violation of Title 18, United States Code, Section 1343.

COUNT TEN:  18 U.S.C. § 1028A (Aggravated Identity Theft)

50.     The factual allegations in Paragraphs 1 through 46 are re-alleged and incorporated as if fully set forth here.

51.     On or about December 12, 2018, in the Northern District of California, and elsewhere, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that the defendant knew belonged to another person, namely, the name and date of birth of G.P., during and in relation to the conspiracy to commit wire fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Superseding Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT ELEVEN:   18 U.S.C. § 1028A (Aggravated Identity Theft)

52.     The factual allegations in Paragraphs 1 through 46 are re-alleged and incorporated as if fully set forth here.

53.     On or about June 2, 2019, in the Northern District of California, and elsewhere, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the name, business telephone number, and business

SUPERSEDING INDICTMENT                11

email address of P.S., during and in relation to the conspiracy to commit wire fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Superseding Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT TWELVE:   18 U.S.C. § 1028A (Aggravated Identity Theft)

54.     The factual allegations in Paragraphs 1 through 46 are re-alleged and incorporated as if fully set forth here.

55.     On or about November 20, 2019, in the Northern District of California, and elsewhere, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the name, date of birth, driver's license number, and Social Security number of S.W., during and in relation to the conspiracy to commit wire fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Superseding Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT THIRTEEN:  18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud and Bank Fraud)

56.     The factual allegations in Paragraphs 1 through 46 are re-alleged and incorporated as if fully set forth here.

57.     Beginning no later than in or about March of 2020 and continuing until at least in or about February of 2021, in the Northern District of California, and elsewhere, defendant ATTILA COLAR knowingly conspired with at least one other person as well as with others known and unknown to the Grand Jury to commit: (a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) bank fraud, in violation of Title 18, United States Code, Section 1344(1) and (2).

58.     As part of the conspiracy and scheme to defraud, COLAR took advantage of the very persons for whom he was supposed to provide care and housing at AHOD.  COLAR did this by, among

SUPERSEDING INDICTMENT                12

other things, fraudulently misusing for his own personal gain the identities of persons who depended upon him for housing and services.  In so doing, COLAR manipulated persons under his control who were already vulnerable and marginalized because of mental illness and their status as convicted felons and sex offenders.

59.    The objects of the conspiracy were to be carried out, and were carried out, in substance, as follows:

a.    Beginning on a date unknown, but no later than March of 2020, and continuing until a date unknown, but at least February of 2021, COLAR knowingly devised, intended to devise, and carried out a scheme and artifice to defraud banks, lending institutions, and others as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and did knowingly execute, and attempted to execute, a scheme and artifice to defraud a financial institutions as to a material matter, and to obtain money and property owned by and under the custody and control of a financial institution by mean of materially false and fraudulent pretenses, representations, and promises, which scheme is described further below.

b.    As set out in further detail below, COLAR, as the authorized representative of AHOD, submitted PPP loan applications that contained materially false and fraudulent pretenses, representations, and promises to financial institutions to obtain loans.  These false and fraudulent pretenses, representations, and promises included, but were not limited to:

(i) falsely overstating the number of actual AHOD employees and their salaries;

(ii) falsely claiming he was paid a monthly salary as CEO of AHOD of $25,789.41, $15,988.03, and $11,789.41, when in fact he was not;

(iii) falsely listing at least one of his aliases as a separate employee of AHOD who earned $12,425.98 per month, when in fact he did not;

(iv) falsely claiming that at least 73 and as many as 81 employees were employed by AHOD when they were not;

(v) fraudulently submitting falsified or fake documents to the banks and lending institutions to support his PPP loan applications, namely, submitting falsified or fake documents that he purported to have filed with the IRS showing that AHOD had as many as 81 employees and paid

SUPERSEDING INDICTMENT                13

those employees millions of dollars in salary, which was false; and

(vi)  claiming that he had no prior felony convictions, which was false.

c.       As set out in further detail below, COLAR also caused to be submitted PPP loan applications for Oversight and FIG that contained materially false and fraudulent pretenses, representations, and promises to financial institutions to obtain loans.  These false and fraudulent pretenses, representations, and promises included, but were not limited to:

(i) falsely stating that Oversight had 217 employees and an average monthly payroll of $1,157,259.92, when in fact it did not;

(ii) falsely claiming that FIG had 248 employees and an average monthly payroll of approximately $1,324,116, when in fact it did not;

(iii) falsely claiming that a then-resident of AHOD (referred to herein by his initials M.B.) was the CEO of

Oversight, when he was not; and

(iv)  falsely stating that a then-resident of AHOD (referred to herein by his initials B.W.), was the CEO of FIG, when he was not.

d.       In furtherance of and to conceal his scheme, COLAR fraudulently used the names and other personal identifying information that he harvested from AHOD residents to falsely claim that these residents were actually employees of AHOD, Oversight, and FIG, when they were not.

As part of the conspiracy and scheme to defraud:

60.       On or about April 9, 2020, COLAR, as the authorized representative of AHOD, submitted electronically a PPP loan application in the amount of $2,422,615 to Mechanics Bank.  On the loan application, COLAR falsely represented that AHOD had 73 employees and an average monthly payroll of $775,237.  COLAR also provided what purported to be two employee payroll reports, for the time periods from January 1, 2019 to December 31, 2019 and February 2, 2020 to February 29, 2020, which falsely represented that the company had 73 employees and falsely reported the salaries of AHOD's purported employees.

61.       On or about May 20, 2020, COLAR, as the authorized representative of AHOD, submitted electronically a PPP loan application on behalf of AHOD in the amount of $1,938,000 to

SUPERSEDING INDICTMENT                14

Lendio. On the loan application, COLAR falsely represented that AHOD had 73 employees and an average monthly payroll of $775,237. The application contained COLAR's electronic signature, which reflected that the document was submitted from Internet Protocol (IP) address 24.130.186.153. The same IP address had previously been associated with an account with a billing address of 139 Jacaranda Court in Hercules, California. COLAR also provided with the application what purported to be two employee payroll reports, for the time periods from January 1, 2019 to December 31, 2019 and February 2, 2020 to February 29, 2020, which falsely represented that the company had 73 employees and falsely reported the salaries of AHOD's purported employees.

62.     On or about May 22, 2020, COLAR, as the authorized representative of AHOD, submitted electronically a PPP loan application on behalf of AHOD in the amount of $1,618,200 to Fountainhead. On the loan application, COLAR falsely represented that AHOD had 73 employees and an average monthly payroll of $647,284. The application contained COLAR's electronic signature, which reflected that the document was submitted from IP address 24.130.186.153. Although Fountainhead approved the loan, on or about June 11, 2020, COLAR contacted Fountainhead before the loan was dispersed to withdraw his application, stating that he had secured funding from another institution.

63.     On or about June 2, 2020, COLAR submitted a PPP loan application electronically via Liberty SBF's web portal to Celtic Bank. On the loan application, COLAR falsely represented that AHOD had 81 employees and an average monthly payroll of $445,245.

64.     As part of that Celtic Bank PPP loan application process, on or about June 12, 2020, COLAR digitally signed a Closing Document Package for the Celtic Bank loan with DocuSign eSignature. The DocuSign eSignature recorded COLAR's IP address as 24.130.186.153.

65.     Also, as part of that Celtic Bank PPP loan application process, COLAR submitted to Celtic Bank payroll documents falsely stating the amount of payroll expenses incurred by AHOD for the third and fourth quarters of 2019 and the first quarter of 2020. In these documents, AHOD falsely claimed to have 81 employees for an average monthly payroll of $445,245.

66.     In all the PPP loan applications described above, COLAR answered "No" to Question Six, falsely denying that he had incurred, within the last 5 years, a felony conviction.

SUPERSEDING INDICTMENT                15

67. Relying on the misrepresentations in the June 2, 2020 PPP application, documents submitted during the loan application process, and other statements made or submitted during that process, Celtic Bank approved a loan for AHOD for $1,113,100 and dispersed its funds through Liberty SBF on or about June 15, 2020 to AHOD's business checking account ending in -0770 at US Bank.

68. On or about June 16, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $2,893,000 to Lendio. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,259. The application contained M.B.'s electronic signature, which reflected that the document was submitted from IP address 24.130.186.153.

69. On or about June 19, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $2,893,149.79 to Lendio. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,259.92. The application included what purported to be an IRS Form 940, an Employer's Annual Federal Unemployment (FUTA) Tax Return, which falsely stated that Oversight had made in calendar year 2019 $13,887,108 in total payments to its employees.

70. On or about June 19, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $2,893,149.97 to Radius Bank. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,250. The application included what purported to be an IRS Form 940, an Employer's Annual Federal Unemployment (FUTA) Tax Return, which falsely stated that Oversight had made in calendar year 2019 $13,887,108 in total payments to its employees.

71. On or about June 19, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $2,893,149.79 to Celtic Bank. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of

SUPERSEDING INDICTMENT            16

$1,157,259.92. The application included what purported to be an IRS Form 940, an Employer's Annual Federal Unemployment (FUTA) Tax Return, which falsely stated that Oversight had made in calendar year 2019 $13,887,108 in total payments to its employees.

72. On or about June 19, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $2,893,149.00 to Liberty SBF. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,259.92. The application included what purported to be an IRS Form 940, an Employer's Annual Federal Unemployment (FUTA) Tax Return, which falsely stated that Oversight had made in calendar year 2019 $13,887,108 in total payments to its employees.

73. On or about June 27, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $1,896,063.00 to Seattle Bank. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,259.00. The application included what purported to be an IRS Form 940, an Employer's Annual Federal Unemployment (FUTA) Tax Return, which falsely stated that Oversight had made in calendar year 2019 $13,887,108 in total payments to its employees.

74. On or about June 27, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. to Kabbage. The loan application falsely represented that Oversight had 217 employees.

75. On or about June 28, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $2,893,147.00 to Fundera. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,259.00. The application included what purported to be an IRS Form 940, an Employer's Annual Federal Unemployment (FUTA) Tax Return, which falsely stated that Oversight had made in calendar year 2019 $13,887,108 in total payments to its employees.

76. On or about June 28, 2020, COLAR caused to be submitted electronically a PPP loan

SUPERSEDING INDICTMENT                17

application on behalf of Oversight signed by M.B. as CEO in the amount of $1,895,760.00 to Cross River Bank. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,259.00. The application included what purported to be an IRS Form 940, an Employer's Annual Federal Unemployment (FUTA) Tax Return, which falsely stated that Oversight had made in calendar year 2019 $13,887,108 in total payments to its employees.

77. On or about June 16, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of FIG signed by B.W. as CEO in the amount of $3,310,291.05 to Liberty SBF. The loan application falsely represented that B.W. was the CEO of FIG, that B.W. owned 90% of FIG, and that FIG had 248 employees and an average monthly payroll of $1,324,116.42. The application included what purported to be an IRS Form 941, an Employer's Quarterly Federal Tax Return, which falsely stated that FIG paid $3,974,850 in wages during the first quarter of 2020.

78. On or about June 18, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of FIG signed by B.W. as CEO in the amount of $3,310,000 to Lendio. The loan application falsely represented that B.W. was the CEO of FIG, that B.W. owned 90% of FIG, and that FIG had 248 employees and an average monthly payroll of $1,324,116.00. The application contained B.W.'s electronic signature, which reflected that the document was submitted from IP address 24.130.186.153.

79. On or about February 3, 2021, COLAR caused to be submitted electronically a PPP loan application on behalf of FIG signed by B.W. as CEO in the amount of $3,310,000 to Lendio. The loan application falsely represented that B.W. was the CEO of FIG, that B.W. owned 90% of FIG, and that FIG had 248 employees and an average monthly payroll of $1,324,116.00. The application contained B.W.'s electronic signature, which reflected that the document was submitted from IP address 24.130.186.153.

80. The loan applications that COLAR submitted on behalf of AHOD and caused to be submitted on behalf of Oversight and FIG as part of this scheme sought a total of approximately $34,000,000 in PPP loans.

All in violation of Title 18, United States Code, Section 1349.

SUPERSEDING INDICTMENT                18

COUNTS FOURTEEN AND FIFTEEN:  18 U.S.C. §§ 1344(1),(2),  2 (Bank Fraud and Aiding and Abetting)

81.     The factual allegations in Paragraphs 1 through 46 and 57 through 80 are re-alleged and incorporated as if fully set forth here.

82.     Beginning no later than March of 2020, and continuing through on or about June 27, 2020, in the Northern District of California, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

did knowingly and with the intent to defraud devise and execute, and attempt to execute, a scheme and artifice to defraud financial institutions as to a material matter, and to obtain moneys, funds, credits, assets, and other property owned by and under the custody and control of financial institutions by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

Execution of the Scheme

83.     On or about the dates set forth in the separate counts below, in the Northern District of California, and elsewhere, for the purpose of executing the scheme and artifice referred to above, and attempting to do so, the defendant willfully caused the following, among other things:

| COUNT | DATE | EXECUTION OF THE SCHEME |
|---|---|---|
| Fourteen | 4/9/2020 | Submission of application for PPP loan on behalf of AHOD to obtain a PPP loan in the amount of $2,422,615 to Mechanics Bank, an FDIC-insured bank |
| Fifteen | 6/16/2020 | Disbursement of $1,113,100 of funds from Celtic Bank, an FDIC-insured bank, for a PPP loan to AHOD business checking account ending -0770 at US Bank |

Each in violation of Title 18, United States Code, Section 1344(1), (2).

COUNTS SIXTEEN THROUGH TWENTY-FIVE:  18 U.S.C. §§ 1343 & 2 (Wire Fraud and Aiding and Abetting)

84.     The factual allegations in Paragraphs 1 through 46 and 57 through 80 are re-alleged and

SUPERSEDING INDICTMENT                    19

incorporated as if fully set forth here.

85.     Beginning no later than March of 2020, and continuing through on or about February 3, 2021, in the Northern District of California, and elsewhere, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

did knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud financial institutions as to a material matter, and to obtain money and property from financial institutions by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

Execution of the Scheme

86.     On or about the dates set forth in the separate counts below, in the Northern District of California, and elsewhere, for the purpose of executing the scheme and artifice referred to above, and attempting to do so, the defendant knowingly transmitted and willfully caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds, namely, the following PPP loan applications, among other things:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
| --- | --- | --- |
| Sixteen | 4/9/2020 | Submission of application for PPP loan in the name of AHOD for $2,422,615 to Mechanics Bank by means of an interstate wire |
| Seventeen | 5/20/2020 | Submission of application for PPP loan in the name of AHOD for $1,938,000 to Lendio by means of an interstate wire |
| Eighteen | 5/21/2020 | Submission of application for PPP loan in the name of AHOD for $1,335,619 to Kabbage by means of an interstate wire |
| Nineteen | 5/22/2020 | Submission of application for PPP loan in the name of AHOD for $1,618,200 to Lendio by means of an interstate wire |
| Twenty | 6/2/2020 | Submission of application for PPP loan in the name of AHOD for $1,113,112 to Liberty SBF by means of an interstate wire |
| Twenty-One | 6/16/2020 | Submission of application for PPP loan in the name of Oversight for $2,893,000 to Lendio by means of an interstate wire |
| Twenty-Two | 6/19/2020 | Submission of application for PPP loan in the name of Oversight for $2,893,149.79 to Lendio by means of an interstate wire |

SUPERSEDING INDICTMENT                    20

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| | | |
| Twenty-Three | 6/16/2020 | Submission of application for PPP loan in the name of FIG for $3,310,291.05 to Liberty SBF by means of an interstate wire |
| Twenty-Four | 6/18/2020 | Submission of application for PPP loan in the name of FIG for $3,310,000 to Lendio by means of an interstate wire |
| Twenty-Five | 2/3/2021 | Submission of application for PPP loan in the name of FIG for $3,310,000 to Lendio by means of an interstate wire |

Each in violation of Title 18, United States Code, Section 1343.

COUNT TWENTY-SIX:  18 U.S.C. § 1028A (Aggravated Identity Theft)

87.     The factual allegations in Paragraphs 1 through 46 and 57 through 86 are re-alleged and incorporated as if fully set forth here.

88.     On or about June 16, 2020, in the Northern District of California, and elsewhere, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the name and signature of M.B., during and in relation to wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Twenty-One of this Superseding Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT TWENTY-SEVEN: 18 U.S.C. § 1028A (Aggravated Identity Theft)

89.     The factual allegations in Paragraphs 1 through 46 and 57 through 86 are re-alleged and incorporated as if fully set forth here.

90.     On or about June 19, 2020, in the Northern District of California, and elsewhere, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,

SUPERSEDING INDICTMENT                    21

a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the name and signature of M.B., during and in relation to wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Twenty-Two of this Superseding Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT TWENTY-EIGHT:  18 U.S.C. § 1028A (Aggravated Identity Theft)

91.     The factual allegations in Paragraphs 1 through 46 and 57 through 86 are re-alleged and incorporated as if fully set forth here.

92.     On or about June 16, 2020, in the Northern District of California, and elsewhere, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the name and signature of B.W., during and in relation to wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Twenty-Three of this Superseding Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT TWENTY-NINE:  18 U.S.C. § 1028A (Aggravated Identity Theft)

93.     The factual allegations in Paragraphs 1 through 46 and 57 through 86 are re-alleged and incorporated as if fully set forth here.

94.     On or about June 18, 2020, in the Northern District of California, and elsewhere, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,

a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the name and signature of B.W., during and in relation to wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Twenty-Four of this Superseding Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT THIRTY:  18 U.S.C. § 1028A (Aggravated Identity Theft)

95.    The factual allegations in Paragraphs 1 through 46 and 57 through 86 are re-alleged and incorporated as if fully set forth here.

96.    On or about February 3, 2021, in the Northern District of California, and elsewhere, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the name and signature of B.W., during and in relation to wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Twenty-Five of this Superseding Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT THIRTY-ONE:    18 U.S.C. § 1014 (False Statement to a Bank or Other Federally Insured Institution)

97.    The factual allegations in Paragraphs 1 through 44 and 57 through 86 are re-alleged and incorporated as if fully set forth here.

98.    On or about April 9, 2020, in the Northern District of California, and elsewhere, the defendant,

SUPERSEDING INDICTMENT            23

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly made a false statement for the purpose of influencing the action of Mechanics Bank, an FDIC-insured bank, in connection with an application for a PPP loan, in that the defendant falsely and grossly overstated the number of employees of AHOD as 73 and the monthly payroll for AHOD as $775,237, when in truth and in fact, as the defendant well knew, the number of employees and the monthly payroll was significantly less than he represented in the application.

All in violation of Title 18, United States Code, Section 1014.

COUNT THIRTY-TWO:    18 U.S.C. § 1014 (False Statement to a Bank or Other Federally Insured Institution)

99.    The factual allegations in Paragraphs 1 through 45 and 57 through 86 are re-alleged and incorporated as if fully set forth here.

100.    On or about June 2, 2020, in the Northern District of California, and elsewhere, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly made a false statement for the purpose of influencing the action of Celtic Bank, an FDIC-insured bank, in connection with an application for a PPP loan for AHOD, in that the defendant falsely and grossly overstated the number of employees of AHOD as 81 and the monthly payroll for AHOD as $445,245, when in truth and in fact, as the defendant well knew, the number of employees and the monthly payroll was significantly less than he represented in the application.

All in violation of Title 18, United States Code, Section 1014.

COUNT THIRTY-THREE:    18 U.S.C. § 2232(a) (Destruction or Removal of Property to Prevent Search or Seizure)

101.    On or about July 1, 2020, in the Northern District of California, the defendant,

SUPERSEDING INDICTMENT            24

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

before and during the search for and seizure of property by agents of the Federal Bureau of Investigation and the Office of Inspector General for the Board of Governors of the Federal Reserve System and the Consumer Financial Protection Bureau, persons authorized to make such search and seizure, did knowingly attempt to destroy, damage, waste, dispose of, and transfer documents, for the purpose of preventing and impairing the Government's lawful authority to take such property into its custody and control.

All in violation of Title 18, United States Code, Section 2232(a).

ADDITIONAL SENTENCING ALLEGATION

[18 U.S.C. § 3147]

102.    At the time of the offenses charged in Counts Thirteen, Twenty-Five, and Thirty of this Superseding Indictment, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a/ DAVID LEE, and
a/k/a GEORGI PETRAKOV,

was released under Title 18, United States Code, Section 3142, in the criminal case *United States v. Attila Colar*, 20-mag-70667, United States District Court for the Northern District of California.

FORFEITURE ALLEGATION:  18 U.S.C. § 982(a)(1)(C) and 28 U.S.C. § 2461(c)

103.    The allegations contained in this Superseding Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

104.    Upon conviction for any of the offenses set forth in Counts One through Nine, and Sixteen through Twenty-Five of this Superseding Indictment, the defendant,

SUPERSEDING INDICTMENT                25

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations, including but not limited to a forfeiture money judgment and the following specific property: $1,113,100 seized from a US Bank business checking account ending in -0770.

105.    Upon conviction for any of the offenses set forth in Counts Thirteen through Fifteen, Thirty-One, and Thirty-Two of this Superseding Indictment, the defendant,

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations, including but not limited to a forfeiture money judgment.

106.    If any of the property described above, as a result of any act or omission of the defendant:

a.    cannot be located upon exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

SUPERSEDING INDICTMENT                    26

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

DATED: January 25, 2022                                    A TRUE BILL.


                                                                    /s/
                                                          _____
                                                          FOREPERSON


STEPHANIE M. HINDS
United States Attorney


*Barbara J Valliere*
_____
BARBARA J. VALLIERE
ADAM A. REEVES
Assistant United States Attorneys


SUPERSEDING INDICTMENT                    27