AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
    ☒ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;
18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud and Bank Fraud;
18 U.S.C. § 1344(1), (2) – Bank Fraud;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1028A – Aggravated Identity Theft;
18 U.S.C. § 1014 – False Statement to a Bank or Other

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:  see additional sheet

---

**Name of District Court, and/or Judge/Magistrate Location**

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

**DEFENDANT - U.S**

ATTILA COLAR, a/k/a DAHOOD SHARIFF BEY, a/k/a SHARIEFF DAHOOD BEY, a/k/a SHARIEFF PASHA, and a/k/

DISTRICT COURT NUMBER

21-CR-163 HSG

FILED

**DEFENDANT**  APR 05 2022
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

Northern District of California

**IS IN CUSTODY**
4) ☒ On this charge
5) ☐ On another conviction  } ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No  } If "Yes" give date filed ____

DATE OF ARREST ▶ Month/Day/Year ____
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year ____

---

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

20-xr-91311

Name and Office of Person Furnishing Information on this form ____ Stephanie M. Hinds

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)  Barbara J. Valliere

☐ This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

**PROCESS:**
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

Comments:

Bail Amount: ____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: ____    Before Judge: ____

FILED

APR 05 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**Attachment 1 to Penalty Sheet for Attila Colar
Second Superseding Indictment
21-CR-163 HSG**

COUNT 1: 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

   Maximum 20 years' imprisonment; maximum $1,000,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNTS 2-9, 17-28: 18 U.S.C. § 1343 & 2 (Wire Fraud and Aiding and Abetting)

   Maximum 20 years' imprisonment; maximum $1,000,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNTS 10, 12-13, 29-33: 18 U.S.C. § 1028A (Aggravated Identity Theft)

   Mandatory minimum consecutive 2-year sentence; 1 year of supervised release

COUNT 14: 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud and Wire Fraud)

   Maximum 30 years' imprisonment; maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNTS 15 & 16: 18 U.S.C. § 1344(1), (2) & 2 (Bank Fraud and Aiding and Abetting)

   Maximum 30 years' imprisonment; maximum 3 years' supervised release; maximum $1,000,000 fine; $100 special assessment

COUNTS 34 & 35: 18 U.S.C. § 1014 & 2 (False Statement to a Bank or Other Federally Insured Institution and Aiding and Abetting)

   Maximum 20 years' imprisonment; maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNT 36: 8 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm and Ammunition)

   Maximum 10 years' imprisonment, maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNT 37: 18 U.S.C. §§ 1512(c)(2) and 2 (Obstruction of Official Proceedings and Aiding Abetting)

   Maximum 20 years' imprisonment, maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

FILED

APR 0 5 2022

**Attachment 1 to Penalty Sheet for Attila Colar (page 2)
21-CR-163 HSG**

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

COUNT 38: 18 U.S.C. § 2232(a) (Destruction or Removal of Property to Prevent Search or Seizure)

Maximum 5 years' imprisonment; maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNTS 39 & 40: 18 U.S.C. § 1519 (Destruction, Alteration, or Falsification of Records in Federal Investigations)

Maximum 20 years' imprisonment, maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNTS 41-46: 26 U.S.C. § 7206(1) (Making and Subscribing a False Return, Statement, or Other Document)

Maximum 3 years' imprisonment, maximum 1 year of supervised release; maximum fine $100,000

COUNT 47: 18 U.S.C. § 1512(k) (Conspiracy to Tamper with a Victim or Witness) (both defendants)

Maximum 20 years' imprisonment, maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNT 48: 18 U.S.C. §§ 1512(b)(1) and 2 (Tampering with a Witness and Aiding and Abetting)

Maximum 20 years' imprisonment, maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNT 49: 18 U.S.C. §§ 1512(b)(2)(D) and 2 (Tampering with a Witness and Aiding and Abetting)

Maximum 20 years' imprisonment, maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

ADDITIONAL SENTENCING ALLEGATION: 18 U.S.C. § 3147 (Commission of an Offense While on Pretrial Release)

Maximum 10 years' imprisonment

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☒ SUPERSEDING

### ─ OFFENSE CHARGED ─

18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;
18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud and Bank Fraud;
18 U.S.C. § 1344(1), (2) – Bank Fraud;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1028A – Aggravated Identity Theft;
18 U.S.C. § 1014 – False Statement to a Bank or Other ☐

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:   see additional sheet

Name of District Court, and/or Judge/Magistrate Location
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

### ─ DEFENDANT - U.S ─

▶ JAMEELAH BEY, a/k/a JAMEELAH MUHAMMAD BEY, ~~a/k/a JAMEELAH AASMA MUHAMMAD, a/k/a SANTINA~~ ☐

DISTRICT COURT NUMBER

21-CR-163 HSG

**FILED**
APR 05 2022
~~CLERK, U.S. DISTRICT COURT~~
~~NORTH DISTRICT OF CALIFORNIA~~

### ─ PROCEEDING ─

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

_____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

_____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE

} SHOW DOCKET NO.
_____

☐ this prosecution relates to a pending case involving this same defendant

} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

}
_____

Name and Office of Person
Furnishing Information on this form ___ Stephanie M. Hinds
☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned) ___ Barbara J. Valliere

### ─ DEFENDANT ─

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District) .
_____

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution
_____

Has detainer ☐ Yes } If "Yes" give date filed _____
been filed? ☐ No

DATE OF ARREST ▶ _____ Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ _____ Month/Day/Year

☐ This report amends AO 257 previously submitted

### ─ ADDITIONAL INFORMATION OR COMMENTS ─

**PROCESS:**
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT   Bail Amount: _____

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Defendant Address:

_____   Date/Time: _____   Before Judge: _____

Comments:

**Attachment 1 to Penalty Sheet for Jameelah Bey
Second Superseding Indictment
21-CR-163 HSG**

FILED

APR 05 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

COUNT 1:  18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

Maximum 20 years' imprisonment; maximum $1,000,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNTS 2-9, 17-28: 18 U.S.C. § 1343 & 2 (Wire Fraud and Aiding and Abetting)

Maximum 20 years' imprisonment; maximum $1,000,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNTS 11:  18 U.S.C. § 1028A (Aggravated Identity Theft)

Mandatory minimum consecutive 2-year sentence; 1 year of supervised release

COUNT 14:  18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud and Wire Fraud)

Maximum 30 years' imprisonment; maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNTS 15 & 16:  18 U.S.C. § 1344(1), (2) & 2 (Bank Fraud and Aiding and Abetting)

Maximum 30 years' imprisonment; maximum 3 years' supervised release; maximum $1,000,000 fine; $100 special assessment

COUNTS 34 & 35:  18 U.S.C. § 1014 & 2 (False Statement to a Bank or Other Federally Insured Institution and Aiding and Abetting)

Maximum 20 years' imprisonment; maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNT 37:  18 U.S.C. §§ 1512(c)(2) and 2 (Obstruction of Official Proceedings and Aiding Abetting)

Maximum 20 years' imprisonment, maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNT 47:  18 U.S.C. § 1512(k) (Conspiracy to Tamper with a Victim or Witness)

Maximum 20 years' imprisonment, maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

**FILED**

**Attachment 1 to Penalty Sheet for Jameelah Bey (page 2)
21-CR-163 HSG**

APR 05 2022

CLERK, U.S. DISTRICT COURT
N. DISTRICT OF CALIFORNIA

COUNT 48:  18 U.S.C. §§ 1512(b)(1) and 2 (Tampering with a Witness and Aiding and Abetting)

Maximum 20 years' imprisonment, maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

COUNT 49:  18 U.S.C. §§ 1512(b)(2)(D) and 2 (Tampering with a Witness and Aiding and Abetting)

Maximum 20 years' imprisonment, maximum $250,000 fine; maximum 3 years' supervised release; $100 special assessment

# United States District Court

## FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

## VENUE: OAKLAND

FILED

APR 05 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

V.

ATTILA COLAR, a/k/a DAHOOD SHARIEFF BEY, a/k/a
SHARIEFF DAHOOD BEY, a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and a/k/a GEORGI PETRAKOV,
and
JAMEELAH BEY, a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD, a/k/a
CANTINA WILSON, and a/k/a STEPHANIE CHERIPKA,

DEFENDANT(S).

# SECOND SUPERSEDING INDICTMENT

18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;
18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud and Bank Fraud;
18 U.S.C. § 1344(1), (2) – Bank Fraud;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1028A – Aggravated Identity Theft;
18 U.S.C. § 1014 – False Statement to a Bank or Other Federally Insured Institution;
18 U.S.C. § 2232(a) – Destruction or Removal of Property to Prevent Search or Seizure;
18 U.S.C. § 922(g) – Felon in Possession of a Firearm and Ammunition;
18 U.S.C. § 1512(c)(2) – Obstruction of Official Proceedings; 18 U.S.C. § 1519 – Destruction, Alteration, or Falsification of Records in Federal Investigations;
26 U.S.C. § 7206 – Making and Subscribing a False Return, Statement, or Other Document;
18 U.S.C. § 1512(k) – Conspiracy to Tamper with a Witness;
18 U.S.C. § 1512(b)(1) – Tampering with a Witness;
18 U.S.C. § 1512(b)(2) – Tampering with a Witness;
18 U.S.C. § 2 – Aiding and Abetting;
18 U.S.C. § 3147 – Commission of Crime While on Release;
18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Forfeiture Allegation

A true bill.

/s/ Foreperson of the Grand Jury

Foreman

Filed in open court this ___5th___ day of

April 2022

Clerk

Bail, $ _Arrest Warrant_ & No Process

Hon. Thomas S. Hixson, U.S. Magistrate Judge

STEPHANIE M. HINDS (CABN 154284)
United States Attorney

FILED

APR 05 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ATTILA COLAR, a/k/a DAHOOD SHARIEFF BEY, a/k/a SHARIEFF DAHOOD BEY, a/k/a SHARIEFF PASHA, a/k/a DAVID LEE, and a/k/a GEORGI PETRAKOV,

    and

JAMEELAH BEY, a/k/a JAMEELAH MUHAMMAD BEY, a/k/a JAMEELAH AASMA MUHAMMAD, a/k/a CANTINA WILSON, and a/k/a STEPHANIE CHERIPKA,

    Defendants.

CASE NO.  21-CR-163 HSG

VIOLATIONS:

18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;
18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud and Bank Fraud;
18 U.S.C. § 1344(1), (2) – Bank Fraud;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1028A – Aggravated Identity Theft;
18 U.S.C. § 1014 – False Statement to a Bank or Other Federally Insured Institution;
18 U.S.C. § 2232(a) – Destruction or Removal of Property to Prevent Search or Seizure;
18 U.S.C. § 922(g) – Felon in Possession of a Firearm and Ammunition;
18 U.S.C. § 1512(c)(2) – Obstruction of Official Proceedings; 18 U.S.C. § 1519 – Destruction, Alteration, or Falsification of Records in Federal Investigations;
26 U.S.C. § 7206 – Making and Subscribing a False Return, Statement, or Other Document;
18 U.S.C. § 1512(k) – Conspiracy to Tamper with a Witness;
18 U.S.C. § 1512(b)(1) – Tampering with a Witness;
18 U.S.C. § 1512(b)(2) – Tampering with a Witness;
18 U.S.C. § 2 – Aiding and Abetting;
18 U.S.C. § 3147 – Commission of Crime While on Release;
18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Forfeiture Allegation

OAKLAND VENUE

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

#### The Defendants

1.     Defendant ATTILA COLAR, a/k/a DAHOOD SHARIEFF BEY, a/k/a SHARIEFF DAHOOD BEY, a/k/a SHARIEFF PASHA, a/k/a DAVID LEE, and a/k/a GEORGI PETRAKOV, resided in Hercules and Richmond, California.

2.     Defendant JAMEELAH BEY, a/k/a JAMEELAH MUHAMMAD BEY, a/k/a JAMEELAH AASMA MUHAMMAD, a/k/a CANTINA WILSON, and a/k/a STEPHANIE CHERIPKA, resided in Hercules and Richmond, California.

3.     In 2015, COLAR (under the name DAHOOD BEY) pleaded no contest and was convicted of fourteen felony counts of California Penal Code § 115 (filing a false document), three felony counts of California Revenue and Tax Code § 19706 (tax evasion), three felony counts of California Penal Code § 487(a) (grand theft), and one felony count of California Penal Code § 182(a)(1) (conspiracy to commit a crime). In 2015, in the same case, BEY (under the name JAMEELAH BEY) pleaded no contest fourteen felony counts of California Penal Code § 115 (filing a false document), three felony counts of California Penal Code § 487(a) (grand theft), two counts of California Penal Code § 550(a)(1) (insurance fraud), one count of violating California Insurance Code § 11880(a) (fraudulent statements regarding worker's compensation claims), and one felony count of California Penal Code § 182(a)(1) (conspiracy to commit a crime).

4.     On December 12, 2018, COLAR and BEY, posing as identity theft victims G.P. and S.C., rented a three-bedroom single-family dwelling in Hercules, California. The rental application stated that S.C. was employed as a billing representative by an organization called All Hands on Deck.

#### All Hands on Deck

5.     All Hands on Deck (AHOD) was a 501(c)(3) nonprofit organization incorporated in Delaware on or about March 25, 2019, and registered with the California Secretary of State on or about May 21, 2019. Per its Articles of Incorporation, AHOD provided "housing to men getting out of prison,

2

food bank services, life and work skills, trainings, resiliency treatment services, prenatal life skills, and a variety of necessary know hows [sic] to survive in today's society." The Bylaws of All Hands on Deck adopted on March 25, 2019, listed both COLAR and his alias DAVID LEE as "Incorporators." The registration statement filed with the California Secretary of State regarding AHOD listed as AHOD's business address the address in Hercules, California, where COLAR resided. On March 28, 2019, the Internal Revenue Service (IRS) assigned AHOD Employer Identification Number (EIN) 83-4171838. AHOD received an IRS nonprofit status ruling in February of 2020.

6. As early as November 27, 2019, COLAR held himself out as AHOD's Chief Executive Officer (CEO), Treasurer, and Secretary. In January 2021, documents filed with the California Secretary of State revealed that L.L. was then the CEO of AHOD.

7. On or about November 27, 2019, as its CEO, Treasurer, and Secretary, COLAR opened a business bank account for AHOD at Mechanics Bank, with an account number ending in -8345. COLAR was the sole signatory on that account.

8. On or about May 19, 2020, COLAR opened a business checking account for AHOD at US Bank, with an account number ending in -0770. COLAR was the sole signatory on that account.

<u>Entities Doing Business with AHOD</u>

9. GEO Reentry Services, LLC (GEO Reentry), provided treatment and supervision programs for adult probationers, parolees, and pretrial defendants in residential, in-custody, and non-residential reentry centers. GEO Reentry was a part of its parent company, The GEO Group, Inc., which is headquartered in Boca Raton, Florida, and is a publicly traded real estate investment trust that invests in private prisons and mental health facilities in North America, Australia, South Africa, and the United Kingdom. GEO Corrections is also a part of The GEO Group, Inc.

10. Specialized Treatment for Optimized Programming (STOP) was a program established and funded by the California Department of Corrections and Rehabilitation (CDCR) to connect parolees with community housing or treatment services. CDCR referred parolees to STOP locations upon release. In addition to reentry housing, STOP services were to include, at a minimum, substance use disorder treatment; detoxification services; assistance with enrollment to health care services; general health education services; motivational incentives; anger management; criminal thinking therapy; life

3

skills programs; community and family reunification services; employment and educational services; individual, family, and group counseling; faith-based services; recovery and reentry housing; and emergency housing services. GEO Reentry contracted with CDCR to provide STOP services.

11. CDCR Day Reporting Centers (DRCs) offered a comprehensive service delivery program designed to address the needs of parolees. GEO Reentry contracted with CDCR to provide DRC services.

The Paycheck Protection Program

12. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. As part of the CARES Act, Congress announced the Paycheck Protection Program (PPP), and in April 2020, authorized over $300 billion in additional PPP funding. The purpose of the PPP was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses.

13. The PPP was administered by the U.S. Small Business Administration (SBA). The SBA was a cabinet-level federal agency that provided counseling, capital, and contracting expertise for small businesses.

14. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application ("SBA Form 2483"), which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certifications to be eligible to obtain the PPP loan. One such certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." The applicant (through its authorized representative) was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may pursue federal criminal charges." In the PPP loan application, the applicant was required to state, among other things, its: (1) average monthly payroll expenses; and (b) number of employees. These figures were used to

calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses.

15.    From at least in or around April 2020 to on or about June 10, 2020, Question Six on SBA Form 2483 read: "Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgement)?" Question Six contained the option to check either "Yes" or "No" in response.

16.    In completing a PPP loan application, the applicant was required to place their initials on a line next to the statement:

> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

17.    A PPP loan application was submitted to and processed by a participating lending financial institution. If a PPP loan application was approved by the participating financial institution, that institution funded the PPP loan using its own monies. The loan was 100 percent guaranteed by the SBA.

18.    Information from the application was transmitted by the lender to the SBA as the loan was processed.

19.    PPP loan proceeds were required to be used by the business on permissible expenses—payroll costs, interest on mortgages, rent, and utilities. Under the terms of the CARES Act, the interest and principal on a PPP loan would be forgiven if the business spent the loan proceeds on these expense items within a designated period and used at least 60 percent of the PPP loan proceeds on payroll expenses.

### Financial Institutions and Other Companies

20.    Fountainhead Commercial Capital (Fountainhead) was a non-bank direct commercial lender headquartered outside of Orlando, Florida, that specialized in small business loans.

5

21.     Mechanics Bank was a financial institution, as that term is defined in Title 18, United States Code, Section 20, headquartered in Walnut Creek, California, the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC).

22.     Celtic Bank was a financial institution, as that term is defined in Title 18, United States Code, Section 20, headquartered in Salt Lake City, Utah, the deposits of which were insured by the FDIC.

23.     Liberty Small Business Finance (Liberty SBF) was a commercial real estate finance company, headquartered in Philadelphia, Pennsylvania, that provided loan origination, loan servicing, and lender services.

24.     Lendio was a third-party lending partner that connected lenders and small business in search of loans.  It was headquartered in Lehi, Utah.

25.     Kabbage, Inc., was an online financial technology company based in Atlanta, Georgia, that provided funding directly to small businesses and consumers through an automated lending platform.

26.     Radius Bank was a financial institution, as that term is defined in Title 18, United States Code, Section 20, headquartered in Boston, Massachusetts, the deposits of which were insured by the FDIC.  Radius Bank was acquired by LendingClub Bank N.A. on February 1, 2021.

27.     Seattle Bank was a financial institution, as that term is defined in Title 18, United States Code, Section 20, headquartered in Seattle, Washington, the deposits of which were insured by the FDIC.

28.     Fundera was an online marketplace that worked to help match small business owners with business loans.  It was headquartered in New York, New York.

29.     Cross River Bank was a financial institution, as that term is defined in Title 18, United States Code, Section 20, headquartered in Teaneck, New Jersey, the deposits of which were insured by the FDIC.

30.     Bankers Healthcare Group was a privately owned company that provided financing and credit cards to healthcare professionals.  It was headquartered in Davie, Florida.

31.     DocuSign, Inc. (DocuSign), was an American company headquartered in San Francisco,

6

California, that offered remote document signature and management services.

PPP Loan Applicants

32.   As alleged above, AHOD was a Delaware corporation that was registered in California.

33.   Oversight Security, Inc. (Oversight), was a for-profit organization incorporated in Delaware on or about August 13, 2014.  Its business address was in San Rafael, California.

34.   The Family Investment Group Inc. (FIG) was a for-profit organization incorporated in Delaware on or about July 25, 1996.  Its business address was in Walnut Creek, California.

COUNT ONE:   18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

35.   The factual allegations in Paragraphs 1 through 11 are re-alleged and incorporated as if fully set forth here.

36.   Beginning no later than in or around December 2018 and continuing until at least in or around December 2020, in the Northern District of California, and elsewhere, the defendants,

ATTILA COLAR,<br>
a/k/a DAHOOD SHARIEFF BEY,<br>
a/k/a SHARIEFF DAHOOD BEY,<br>
a/k/a SHARIEFF PASHA,<br>
a/k/a DAVID LEE, and<br>
a/k/a GEORGI PETRAKOV,<br>
<br>
and<br>
<br>
JAMEELAH BEY,<br>
a/k/a JAMEELAH MUHAMMAD BEY,<br>
a/k/a JAMEELAH AASMA MUHAMMAD,<br>
a/k/a CANTINA WILSON, and<br>
a/k/a STEPHANIE CHERIPKA,

and others known and unknown to the Grand Jury, knowingly conspired to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

37.   The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:  Beginning on a date unknown, but no later than December of 2018, and continuing until a date unknown, but at least December 2020, COLAR and BEY knowingly devised, intended to devise, and carried out a scheme and artifice to defraud GEO Reentry and others as to a material matter, and to obtain money and property from GEO Reentry and others by means of materially false and fraudulent pretenses, representations, and promises.

7

As part of the conspiracy and scheme to defraud:

38.    In December 2018, COLAR and BEY falsely impersonated identity theft victims G.P. and S.C., respectively, to enter into a lease to rent a house in Hercules, California. The fraudulently rented Hercules residence was thereafter used as the business address for AHOD. As part of the scheme to defraud, COLAR and BEY falsely provided to the landlord of the house the personal identifying information of the identity theft victims G.P. and S.C., including a fake tenant screening report, a fake bank statement for a joint checking account for a Nevada bank, and counterfeit driver's licenses. The tenant screening report provided by COLAR and BEY in the names of G.P. and S.C. misleadingly stated that the applicants had no criminal record, when both COLAR and BEY in fact were previously convicted of fraud. The bank statement was also fraudulent, in that G.P. and S.C., who are not a couple and who do not know each other, have never held bank accounts in Nevada. Based in part on these fraudulent statements and documents, the landlord rented the house to COLAR and BEY, believing them to be G.P. and S.C.

39.    On or about March 25, 2019, COLAR caused AHOD to be incorporated in Delaware as a 501(c)(3) nonprofit organization to provide housing and other services to men getting out of prison. Four persons signed the Articles of Incorporation: COLAR (as Attila C. Colar), DAVID LEE (a known alias for COLAR), C.H., and M.T. On or about May 21, 2019, AHOD filed with the California Secretary of State a Statement and Designation by Foreign Corporation. A forged signature of C.H., a "corporate officer," was affixed to the Statement. The business address listed was the Hercules address fraudulently rented by COLAR (as G.P.) and BEY (as S.C.).

40.    On or about June 3, 2019, COLAR and other representatives from AHOD delivered a Request for Qualifications (RFQ) Application to GEO Reentry to obtain a subcontract agreement to provide STOP placement services for eligible individuals at AHOD residential facilities. In its June 2, 2019, cover letter to the RFQ Application to GEO Reentry, AHOD falsely held itself out to be "a community based, non-profit organization, that provides Sober Living Housing and Residential Drug and Alcohol Treatment Centers to Recovering Individuals, Parolees, Probationers, Homeless veterans and those with Mental Health Conditions in need of a safe sober place to live and develop."

41.    To qualify for the GEO Reentry subcontract, AHOD was required to submit certain

8

documents, including for example, staffing information, subcontractor rate sheets, and a series of certification documents that included licenses, insurance coverage, and three professional letters of recommendation from other agencies where AHOD provided similar services. During the summer of 2019, GEO Reentry requested additional documents from AHOD to complete its Application. In its RFQ Application, AHOD made false statements (including the names and qualifications of its Board of Directors members and the names and qualifications of its independent contractors), provided fabricated fire inspection certificates that contained fake headers, and provided fabricated letters of recommendation from two Richmond, California, non-profit companies.

42. In its RFQ Application, AHOD listed Sharrieff Pasha (an alias for COLAR) as the Director and Jameelah Asma (an alias for BEY) as the assistant director. AHOD also identified six persons as its GEO – STOP 2 Program Staff, including V.T., S.W., G.M.A., R.R., B.C., and L.L., and falsely represented that 11 named independent contractors would provide the following services: a Peer Recovery Coach, two Certified Counselors, a Nurse Practitioner, a Family Counselor, a Detox Specialist, a Program Administrator, an Outreach Coordinator, a Cook/House Keeper, and an Admission Intake Specialist.

43. Based in part on these fraudulent statements and documents, on November 1, 2019, GEO Reentry entered into a referral agreement with AHOD to provide STOP services.

44. After obtaining the STOP subcontract with GEO Reentry, AHOD continued to provide GEO Reentry with fraudulent documents. Specifically, in order to facilitate CDCR's STOP program, AHOD was required to obtain security clearances for some of its employees. To obtain these clearances, AHOD was required to submit to CDCR through GEO Reentry Authorization for Security Clearance forms that included the name, date of birth, Social Security number, and driver's license number of the AHOD employees. The forms also required the employee to provide a complete account of their criminal arrest record. In November of 2019, AHOD through COLAR and BEY, provided GEO Reentry with the following fraudulent Authorization for Security Clearance forms: a form signed by COLAR which falsely stated that he had no criminal history, and forged Authorization forms that contained the personal identifying information of AHOD employees S.W., D.W., and O.C.

45. On or about February 10, 2020, GEO Reentry entered into a second agreement with

9

AHOD to provide DRCs on behalf of the CDCR. The contract called for AHOD to provide housing and day reporting center services. Among other requirements, the contract called upon AHOD to provide "a quality, clean, healthy, therapeutic, drug and alcohol free sober living environment for a culturally diverse community servicing individuals afflicted with alcohol, substance abuse and mental health disorders," and "assistance for a comprehensive, structured life style for re-entry into society."

46.    Rather than provide a "quality, clean, healthy, therapeutic, drug and alcohol free sober living environment" at AHOD, (a) COLAR tolerated drug use on AHOD premises; (b) COLAR intimidated and threatened residents with physical harm; (c) COLAR engaged in verbal and physical abuse of vulnerable AHOD residents; (d) COLAR and BEY confiscated residents' Social Security and other benefits; (e) COLAR and BEY stole, misappropriated, or otherwise illegally used residents' personal identifying information; and (f) COLAR ignored residents' medical needs. Specifically, COLAR and BEY used residents' personal identifying information as part and in furtherance of the conspiracy and scheme to defraud the PPP program described in Paragraphs 59 through 84 below.

47.    During the course of the STOP contract, GEO Reentry paid AHOD a total of approximately $81,188 pursuant to the fraudulently obtained subcontract for housing and other services. During the course of a second GEO Reentry subcontract for housing and other services that relied on the same AHOD RFQs, GEO Reentry paid AHOD a total of approximately $45,764. The total amount paid to AHOD by GEO for both contracts was approximately $126,952.

All in violation of Title 18, United States Code, Section 1349.

COUNTS TWO THROUGH NINE: 18 U.S.C. §§ 1343 & 2 (Wire Fraud and Aiding and Abetting)

48.    The factual allegations in Paragraphs 1 through 47 are re-alleged and incorporated as if fully set forth here.

49.    Beginning no later than December 2018, and continuing through in or about December 2020, in the Northern District of California, and elsewhere, the defendants,

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

and

10

JAMEELAH BEY,
a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD,
a/k/a CANTINA WILSON, and
a/k/a STEPHANIE CHERIPKA,

did knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud GEO Reentry and others as to a material matter, and to obtain moneys and property from GEO Reentry and others by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

### Execution of the Scheme

50.    On or about the dates set forth in the separate counts below, in the Northern District of California, and elsewhere, for the purpose of executing the scheme and artifice referred to above, and attempting to do so, the defendant knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds, namely, the following interstate email communications and the following interstate wire transfers of funds, among other things:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| Two | 6/2/2019 | Email communication between AHOD and GEO Reentry regarding AHOD's submission of an RFQ Application for GEO STOP Reentry Services |
| Three | 11/15/2019 | Email communication from GEO Reentry to AHOD attaching Authorization for Clearance forms for AHOD employees |
| Four | 12/4/2019 | Email communication from AHOD to GEO Group attaching Vendor Application Documents |
| Five | 1/27/2020 | Wire payment for $225 from GEO Corrections to AHOD Mechanics Bank account number ending -8345 |
| Six | 2/28/2020 | Wire payment for $20,044.75 from GEO Corrections to AHOD Mechanics Bank account number ending -8345 |
| Seven | 3/27/2020 | Wire payment for $57,138.65 from GEO Corrections to AHOD Mechanics Bank account number ending -8345 |
| Eight | 4/24/2020 | Wire payment of $3,780 from GEO Corrections to AHOD Mechanics Bank account number ending -8345 |
| Nine | 6/26/2020 | Wire payment of $4,375 from GEO Corrections to AHOD US Bank account number ending -0770 |

11

Each in violation of Title 18, United States Code, Section 1343.

COUNT TEN:         18 U.S.C. § 1028A (Aggravated Identity Theft)

51.     The factual allegations in Paragraphs 1 through 47 are re-alleged and incorporated as if fully set forth here.

52.     On or about December 12, 2018, in the Northern District of California, and elsewhere, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that the defendant knew belonged to another person, namely, the name and date of birth of G.P., during and in relation to the conspiracy to commit wire fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT ELEVEN:    18 U.S.C. § 1028A (Aggravated Identity Theft)

53.     The factual allegations in Paragraphs 1 through 47 are re-alleged and incorporated as if fully set forth here.

54.     On or about December 12, 2018, in the Northern District of California, and elsewhere, the defendant

JAMEELAH BEY,
a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD,
a/k/a CANTINA WILSON, and
a/k/a STEPHANIE CHERIPKA,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that the defendant knew belonged to another person, namely, the name and date of birth of S.C., during and in relation to the conspiracy to commit wire fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

All in violation of Title 18, United States Code, Section 1028A.

12

COUNT TWELVE:   18 U.S.C. § 1028A (Aggravated Identity Theft)

55.   The factual allegations in Paragraphs 1 through 47 are re-alleged and incorporated as if fully set forth here.

56.   On or about June 2, 2019, in the Northern District of California, and elsewhere, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that the defendant knew belonged to another person, namely, the name, business telephone number, and business email address of P.S., during and in relation to the conspiracy to commit wire fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT THIRTEEN:        18 U.S.C. § 1028A (Aggravated Identity Theft)

57.   The factual allegations in Paragraphs 1 through 47 are re-alleged and incorporated as if fully set forth here.

58.   On or about November 20, 2019, in the Northern District of California, and elsewhere, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that the defendant knew belonged to another person, namely, the name, date of birth, driver's license number, and Social Security number of S.W., during and in relation to the conspiracy to commit wire fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

13

All in violation of Title 18, United States Code, Section 1028A.

COUNT FOURTEEN:   18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud and Bank Fraud)

59.   The factual allegations in Paragraphs 1 through 47 are re-alleged and incorporated as if fully set forth here.

60.   Beginning no later than in or about March 2020 and continuing until at least in or about February 2021, in the Northern District of California and elsewhere, the defendants,

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

and

JAMEELAH BEY,
a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD,
a/k/a CANTINA WILSON, and
a/k/a STEPHANIE CHERIPKA,

knowingly conspired to commit: (a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) bank fraud, in violation of Title 18, United States Code, Section 1344(1) and (2).

61.   As part of the conspiracy and scheme to defraud, COLAR took advantage of the persons for whom he was supposed to provide care and housing at AHOD.  COLAR did this by, among other things, fraudulently misusing for his own personal gain the identities of persons who depended upon him for housing and services pursuant to the terms of AHOD's contract with GEO Reentry and other programs.  In so doing, COLAR and BEY manipulated persons who were already vulnerable and marginalized because of mental illness and their status as convicted felons and sex offenders.

62.   The objects of the conspiracy were to be carried out, and were carried out, in substance, as follows:

a.   Beginning on a date unknown, but no later than March of 2020, and continuing until a date unknown, but at least February 2021, COLAR and BEY knowingly devised, intended to devise, and carried out a scheme and artifice to defraud banks, lending institutions, and others as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses,

14

representations, and promises, and did knowingly execute, and attempted to execute, a scheme and artifice to defraud a financial institution as to a material matter, and to obtain money and property owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises, which scheme is described further below.

.  b.      As set out in further detail below, COLAR, as the authorized representative of AHOD, and BEY, the assistant director of AHOD who assisted COLAR by filling out the loan applications and other paperwork and by making calls to lenders, submitted PPP loan applications that contained materially false and fraudulent pretenses, representations, and promises to financial institutions to obtain loans. These false and fraudulent pretenses, representations, and promises included, but were not limited to:

(i) falsely overstating the number of actual AHOD employees and their salaries;

(ii) falsely claiming COLAR was paid a monthly salary as CEO of AHOD of $25,789.41, $15,988.03, and $11,789.41, when in fact he was not;

(iii) falsely listing at least one of COLAR's aliases as a separate employee of AHOD who earned $12,425.98 per month;

(iv) falsely claiming that 73 and as many as 81 employees were employed by AHOD, when in fact they were not;

(v) fraudulently submitting falsified or fake documents to the banks and lending institutions to support the PPP loan applications, namely, submitting falsified or fake documents that he purported to have filed with the IRS showing that AHOD had as many as 81 employees and paid those employees millions of dollars in salary, which was false; and

(vi)  claiming that COLAR had no prior felony convictions, which was false.

c.      As set out in further detail below, COLAR also caused to be submitted PPP loan applications for Oversight and FIG that contained materially false and fraudulent pretenses, representations, and promises to financial institutions to obtain loans. These false and fraudulent pretenses, representations, and promises included, but were not limited to:

(i) falsely stating that Oversight had 217 employees and an average monthly payroll of $1,157,259.92, when in fact it did not;

15

(ii) falsely claiming that FIG had 248 employees and an average monthly payroll of approximately $1,324,116, when in fact it did not;

(iii) falsely claiming that M.B., a then-resident of AHOD, was the CEO of Oversight with over approximately 200 employees and a monthly payroll of over approximately $1 million, when in fact he was not; and

(iv) falsely stating that B.W., a then-resident of AHOD, was the CEO of FIG, when he was not.

d.       In furtherance of and to conceal his scheme, COLAR fraudulently used the names and other personal identifying information that he harvested from AHOD residents to falsely claim that these residents were actually employees of AHOD, Oversight, and FIG, when in fact they were not.

As part of the conspiracy and scheme to defraud:

64.       On or about April 9, 2020, COLAR, as the authorized representative of AHOD, and working with BEY, submitted electronically a PPP loan application in the amount of $2,422,615 to Mechanics Bank. On the loan application, COLAR and BEY falsely represented that AHOD had 73 employees and an average monthly payroll of $775,237. COLAR and BEY also provided what purported to be two employee payroll reports, for the time periods from January 1, 2019 to December 31, 2019 and February 2, 2020 to February 29, 2020, which falsely represented that the company had 73 employees and falsely reported the salaries of AHOD's purported employees.

65.       On or about May 20, 2020, COLAR, as the authorized representative of AHOD, and working with BEY, submitted electronically a PPP loan application on behalf of AHOD in the amount of $1,938,000 to Lendio. On the loan application, COLAR and BEY falsely represented that AHOD had 73 employees and an average monthly payroll of $775,237. The application contained COLAR's electronic signature, which reflected that the document was submitted from Internet Protocol (IP) address 24.130.186.153. The same IP address had previously been associated with an account with a billing address of 139 Jacaranda Court in Hercules, California. COLAR and BEY also provided with the application what purported to be two employee payroll reports, for the time periods from January 1, 2019 to December 31, 2019 and February 2, 2020 to February 29, 2020, which falsely represented that the company had 73 employees and falsely reported the salaries of AHOD's purported employees.

66.       On or about May 21, 2020, COLAR, as the authorized representative of AHOD,

16

submitted electronically a PPP loan application on behalf of AHOD in the amount of $1,335,619 to Kabbage. On the loan application, COLAR falsely represented that AHOD had 73 employees and average monthly payroll of $534,247.60.

67. On or about May 21, 2020, COLAR, as the authorized representative of AHOD, and working with BEY, caused to be submitted electronically a PPP loan application on behalf of AHOD in the amount of $1,942,200 to Bankers Healthcare Group (through Lendio). On the loan application, COLAR and BEY falsely represented that AHOD had 73 employees and an average monthly payroll of $776,901. The application contained COLAR's electronic signature, which reflected that the document had been submitted from IP address 24.130.186.153.

68. On or about May 22, 2020, COLAR, as the authorized representative of AHOD, and working with BEY, submitted electronically a PPP loan application on behalf of AHOD in the amount of $1,618,200 to Fountainhead (through Lendio). On the loan application, COLAR and BEY falsely represented that AHOD had 73 employees and an average monthly payroll of $647,284. The application contained COLAR's electronic signature, which reflected that the document was submitted from IP address 24.130.186.153. Although Fountainhead approved the loan, on or about June 11, 2020, COLAR contacted Fountainhead before the loan was dispersed to withdraw his application, stating that he had secured funding from another institution.

69. On or about June 2, 2020, COLAR, as the authorized representative of AHOD, submitted a PPP loan application electronically via Liberty SBF's web portal to Celtic Bank. On the loan application, COLAR falsely represented that AHOD had 81 employees and an average monthly payroll of $445,245.

70. As part of that Celtic Bank PPP loan application process, on or about June 12, 2020, COLAR digitally signed a Closing Document Package for the Celtic Bank loan with DocuSign eSignature. The DocuSign eSignature recorded COLAR's IP address as 24.130.186.153.

71. Also, as part of that Celtic Bank PPP loan application process, COLAR submitted to Celtic Bank payroll documents falsely stating the amount of payroll expenses incurred by AHOD for the third and fourth quarters of 2019 and the first quarter of 2020. In these documents, AHOD falsely claimed to have 81 employees for an average monthly payroll of $445,245.

17

72. In all the PPP loan applications described above, COLAR answered "No" to Question Six, falsely denying that he had incurred, within the last 5 years, a felony conviction.

73. Relying on the misrepresentations in the June 2, 2020 PPP application, documents submitted during the loan application process, and other statements made or submitted during that process, Celtic Bank approved a loan for AHOD for $1,113,100 and dispersed its funds on or about June 15, 2020 to AHOD's business checking account ending in -0770 at US Bank.

74. On or about June 16, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $2,893,000 to Lendio. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,259. The application contained M.B.'s electronic signature, which reflected that the document was submitted from IP address 24.130.186.153.

75. On or about June 19, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $2,893,149.79 to Lendio. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,259. The application included what purported to be an IRS Form 940, an Employer's Annual Federal Unemployment (FUTA) Tax Return, which falsely stated that Oversight had made in calendar year 2019 $13,887,108 in total payments to its employees.

76. On or about June 19, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $2,893,149.79 to Radius Bank. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,259. The application included what purported to be an IRS Form 940, an Employer's Annual Federal Unemployment (FUTA) Tax Return, which falsely stated that Oversight had made in calendar year 2019 $13,887,108 in total payments to its employees.

77. On or about June 19, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $2,893,149.79 to Liberty

18

SBF. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,259.92. The application included what purported to be an IRS Form 940, an Employer's Annual Federal Unemployment (FUTA) Tax Return, which falsely stated that Oversight had made in calendar year 2019 $13,887,108 in total payments to its employees.

78.     On or about June 27, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $1,896,063 to Seattle Bank. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,259. The application included what purported to be an IRS Form 940, an Employer's Annual Federal Unemployment (FUTA) Tax Return, which falsely stated that Oversight had made in calendar year 2019 $13,887,108 in total payments to its employees.

79.     On or about June 28, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $2,893,147 to Fundera. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,259. The application included what purported to be an IRS Form 940, an Employer's Annual Federal Unemployment (FUTA) Tax Return, which falsely stated that Oversight had made in calendar year 2019 $13,887,108 in total payments to its employees. The application contained M.B.'s electronic signature, which reflected that the document was submitted from IP address 24.130.186.153.

80.     On or about June 28, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of Oversight signed by M.B. as CEO in the amount of $1,895,760 to Cross River Bank. The loan application falsely represented that M.B. was the CEO of Oversight, that M.B. owned 85% of Oversight, and that Oversight had 217 employees and an average monthly payroll of $1,157,259. The application included what purported to be an IRS Form 940, an Employer's Annual Federal Unemployment (FUTA) Tax Return, which falsely stated that Oversight had made in calendar year 2019 $13,887,108 in total payments to its employees. The application contained M.B.'s electronic signature, which reflected that the document was submitted from IP address 24.130.186.153.

19

81. On or about June 16, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of FIG signed by B.W. as CEO in the amount of $3,310,291.05 to Liberty SBF. The loan application falsely represented that B.W. was the CEO of FIG, that B.W. owned 90% of FIG, and that FIG had 248 employees and an average monthly payroll of $1,324,116.42. The application included what purported to be an IRS Form 941, an Employer's Quarterly Federal Tax Return, which falsely stated that FIG paid $3,974,850 in wages during the first quarter of 2020.

82. On or about June 18, 2020, COLAR caused to be submitted electronically a PPP loan application on behalf of FIG signed by B.W. as CEO in the amount of $3,310,000 to Lendio. The loan application falsely represented that B.W. was the CEO of FIG, that B.W. owned 90% of FIG, and that FIG had 248 employees and an average monthly payroll of $1,324,116.42. The application included what purported to be an IRS Form 941, an Employer's Quarterly Federal Tax Return, which falsely stated that FIG paid $3,974,850 in payroll taxes during the first quarter of 2020. The application contained B.W.'s electronic signature, which reflected that the document was submitted from IP address 24.130.186.153.

83. On or about February 3, 2021, COLAR caused to be submitted electronically a PPP loan application on behalf of FIG signed by B.W. as CEO in the amount of $3,310,000 to Lendio. The loan application falsely represented that B.W. was the CEO of FIG, that B.W. owned 90% of FIG, and that FIG had 248 employees and an average monthly payroll of $1,324,116.42. The application contained B.W.'s electronic signature, which reflected that the document was submitted from IP address 24.130.186.153.

84. The loan applications that COLAR submitted on behalf of AHOD and caused to be submitted on behalf of Oversight and FIG as part of this scheme sought a total of approximately $34,655,437 in PPP loans.

All in violation of Title 18, United States Code, Section 1349.

COUNTS FIFTEEN AND SIXTEEN:     18 U.S.C. §§ 1344(1), (2) & 2 (Bank Fraud and Aiding and Abetting)

85. The factual allegations in Paragraphs 1 through 47 and 59 through 84 are re-alleged and

20

incorporated as if fully set forth here.

86.    Beginning no later than in or about March 2020, and continuing through on or about June 27, 2020, in the Northern District of California, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

and

JAMEELAH BEY,
a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD,
a/k/a CANTINA WILSON, and
a/k/a STEPHANIE CHERIPKA,

did knowingly and with the intent to defraud devise and execute, and attempt to execute, a scheme and artifice to defraud financial institutions as to a material matter, and to obtain moneys, funds, credits, assets, and other property owned by and under the custody and control of financial institutions by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

Execution of the Scheme

87.    On or about the dates set forth in the separate counts below, in the Northern District of California, and elsewhere, for the purpose of executing the scheme and artifice referred to above, and attempting to do so, the defendant COLAR caused the following, among other things:

| COUNT | DATE | EXECUTION OF THE SCHEME |
|---|---|---|
| Fifteen | 4/9/2020 | Submission of application for PPP loan on behalf of AHOD to obtain a PPP loan in the amount of $2,422,615 to Mechanics Bank, an FDIC-insured bank |
| Sixteen | 6/16/2020 | Disbursement of $1,113,100 of funds from Celtic Bank, an FDIC-insured bank, for a PPP loan to AHOD business checking account ending -0770 at US Bank |

Each in violation of Title 18, United States Code, Section 1344(1), (2).

21

COUNTS SEVENTEEN THROUGH TWENTY-EIGHT:   18 U.S.C. §§ 1343 & 2 (Wire Fraud and Aiding and Abetting)

88.   The factual allegations in Paragraphs 1 through 47 and 59 through 84 are re-alleged and incorporated as if fully set forth here.

89.   Beginning no later than in or about March 2020, and continuing through on or about February 3, 2021, in the Northern District of California, and elsewhere, the defendants,

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

and

JAMEELAH BEY,
a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD,
a/k/a CANTINA WILSON, and
a/k/a STEPHANIE CHERIPKA,

did knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud financial institutions as to a material matter, and to obtain money and property from financial institutions by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

Execution of the Scheme

90.   On or about the dates set forth in the separate counts below, in the Northern District of California, and elsewhere, for the purpose of executing the scheme and artifice referred to above, and attempting to do so, the defendants knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds, namely, the following PPP loan applications, among other things:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| Seventeen | 4/9/2020 | Submission of application for PPP loan in the name of AHOD for $2,422,615 to Mechanics Bank by means of an interstate wire |
| Eighteen | 5/20/2020 | Submission of application for PPP loan in the name of AHOD for $1,938,000 to Lendio by means of an interstate wire |

22

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| Nineteen | 5/21/2020 | Submission of application for PPP loan in the name of AHOD for $1,335,619 to Kabbage by means of an interstate wire |
| Twenty | 5/22/2020 | Submission of application for PPP loan in the name of AHOD for $1,618,200 to Fountainhead (via Lendio) by means of an interstate wire |
| Twenty-One | 6/2/2020 | Submission of application for PPP loan in the name of AHOD for $2,000,000 to Celtic (via Liberty SBF) by means of an interstate wire |
| Twenty-Two | 6/16/2020 | Submission of application for PPP loan in the name of Oversight for $2,893,000 to Lendio by means of an interstate wire |
| Twenty-Three | 6/19/2020 | Submission of application for PPP loan in the name of Oversight for $2,893,149.79 to Lendio by means of an interstate wire |
| Twenty-Four | 6/27/2020 | Submission of application for PPP loan in the name of Oversight for $1,896,063 to Seattle Bank by means of an interstate wire |
| Twenty-Five | 6/28/2020 | Submission of application for PPP loan in the name of Oversight for $1,895,760 to Cross River Bank by means of an interstate wire |
| Twenty-Six | 6/16/2020 | Submission of application for PPP loan in the name of FIG for $3,310,291.05 to Liberty SBF by means of an interstate wire |
| Twenty-Seven | 6/18/2020 | Submission of application for PPP loan in the name of FIG for $3,310,000 to Lendio by means of an interstate wire |
| Twenty-Eight | 2/3/2021 | Submission of application for PPP loan in the name of FIG for $3,310,000 to Lendio by means of an interstate wire |

Each in violation of Title 18, United States Code, Section 1343.

COUNT TWENTY-NINE:    18 U.S.C. § 1028A (Aggravated Identity Theft)

91.    The factual allegations in Paragraphs 1 through 47 and 59 through 90 are re-alleged and incorporated as if fully set forth here.

92.    On or about June 16, 2020, in the Northern District of California, and elsewhere, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

23

knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the name and signature of M.B., during and in relation to wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Twenty-Two of this Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT THIRTY:    18 U.S.C. § 1028A (Aggravated Identity Theft)

93.    The factual allegations in Paragraphs 1 through 47 and 59 through 90 are re-alleged and incorporated as if fully set forth here.

94.    On or about June 19, 2020, in the Northern District of California, and elsewhere, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the name and signature of M.B., during and in relation to wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Twenty-Three of this Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT THIRTY-ONE:    18 U.S.C. § 1028A (Aggravated Identity Theft)

95.    The factual allegations in Paragraphs 1 through 47 and 59 through 90 are re-alleged and incorporated as if fully set forth here.

96.    On or about June 16, 2020, in the Northern District of California, and elsewhere, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

24

knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the name and signature of B.W., during and in relation to wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Twenty-Six of this Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT THIRTY-TWO:     18 U.S.C. § 1028A (Aggravated Identity Theft)

97.     The factual allegations in Paragraphs 1 through 47 and 59 through 90 are re-alleged and incorporated as if fully set forth here.

98.     On or about June 18, 2020, in the Northern District of California, and elsewhere, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the name and signature of B.W., during and in relation to wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Twenty-Seven of this Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT THIRTY-THREE:   18 U.S.C. § 1028A (Aggravated Identity Theft)

99.     The factual allegations in Paragraphs 1 through 47 and 59 through 90 are re-alleged and incorporated as if fully set forth here.

100.    On or about February 3, 2021, in the Northern District of California, and elsewhere, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

25

knowingly transferred, possessed, and used, without lawful authority, a means of identification that defendant knew belonged to another person, namely, the name and signature of B.W., during and in relation to wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Twenty-Eight of this Indictment.

All in violation of Title 18, United States Code, Section 1028A.

COUNT THIRTY-FOUR:   18 U.S.C. § 1014 (False Statement to a Bank or Other Federally Insured Institution)

101.   The factual allegations in Paragraphs 1 through 47 and 59 through 90 are re-alleged and incorporated as if fully set forth here.

102.   On or about April 9, 2020, in the Northern District of California, and elsewhere, the defendants,

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

and

JAMEELAH BEY,
a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD;,
a/k/a CANTINA WILSON, and
a/k/a STEPHANIE CHERIPKA,

knowingly made a false statement for the purpose of influencing the action of Mechanics Bank, a financial institution the deposits of which were insured by the FDIC, in connection with an application for a PPP loan, in that the defendants falsely stated the number of employees of AHOD as 73 and the monthly payroll for AHOD as $775,237, when in truth and in fact, as the defendants well knew, the number of employees and the monthly payroll was significantly less than represented in the application.

All in violation of Title 18, United States Code, Section 1014.

COUNT THIRTY-FIVE:   18 U.S.C. §§ 1014 and 2 (False Statement to a Bank or Other Federally Insured Institution and Aiding and Abetting)

103.   The factual allegations in Paragraphs 1 through 47 and 59 through 90 are re-alleged and incorporated as if fully set forth here.

26

104. On or about June 2, 2020, in the Northern District of California, and elsewhere, the defendants,

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

and

JAMEELAH BEY,
a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD,
a/k/a CANTINA WILSON, and
a/k/a STEPHANIE CHERIPKA,

knowingly made a false statement for the purpose of influencing the action of Celtic Bank, an FDIC-insured bank, in connection with an application for a PPP loan for AHOD, in that the defendants falsely and overstated and caused to be falsely stated the number of employees of AHOD as 81 and the monthly payroll for AHOD as $445,245, when in truth and in fact, as the defendants well knew, the number of employees and the monthly payroll was significantly less than represented in the application.

All in violation of Title 18, United States Code, Section 1014.

COUNT THIRTY-SIX:     18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm and Ammunition)

105. On or about July 1, 2020, in the Northern District of California, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, namely, a Smith & Wesson .32 caliber revolver bearing serial number 280583, and ammunition, namely, 3 rounds of 7.65mm GECO ammunition, one round of .32 caliber Remington-Peters ammunition, and a high-capacity magazine loaded with 20 rounds of .40 caliber Smith & Wesson ammunition, the firearm and/or ammunition was in and affecting interstate

27

commerce.

All in violation of Title 18, United States Code, Section 922(g)(1).

COUNT THIRTY-SEVEN:·  18 U.S.C. §§ 1512(c)(2) and 2 (Obstruction of Official Proceedings and Aiding and Abetting)

106.    The factual allegations in Paragraphs 1 through 47 and 59 through 90 are re-alleged and incorporated as if fully set forth here.

107.    From on or about July 1, 2020 to on or about February 16, 2022, in the Northern District of California and elsewhere, the defendants,

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

and

JAMEELAH BEY,
a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD,
a/k/a CANTINA WILSON, and
a/k/a STEPHANIE CHERIPKA,

knowingly and corruptly influenced, obstructed, and impeded, and attempted to corruptly influence, obstruct, and impede, an official proceeding, namely: (1) the Grand Jury investigation of COLAR and BEY in the Northern District of California; and (2) beginning on September 22, 2022, criminal proceedings of *United States v. Attila Colar*, 20-MAG-70667 and 21-CR-108 HSG, by executing the below scheme to obstruct justice:

a.    On July 1, 2020, COLAR and BEY's residence was searched pursuant to a search warrant issued by a court of the Northern District of California, and COLAR was served a Grand Jury subpoena in his capacity as a representative of AHOD.  COLAR, with the assistance of BEY, then undertook a series of actions to obstruct the Grand Jury investigation and, once criminal proceedings were initiated against COLAR, the criminal case.

b.    During the execution of the search warrant, COLAR destroyed and removed relevant documents, including by attempting to flush fraudulent loan applications down the toilet, to prevent them from being recovered by the searching agents.

28

c.    During the execution of the search warrant, COLAR falsely stated that the firearms recovered in the bedroom of his home were not his and had been in the home when he and BEY moved into the home.

d.    Within days after the search warrant was executed, and knowing that there was a federal Grand Jury investigation into his fraudulent schemes, COLAR retained a tax preparer to prepare false tax documents on behalf of entities he controlled in an attempt to cover up the fraudulent PPP fraud scheme alleged in Count Fourteen of this Indictment. COLAR created and then provided false documents to the tax preparer and then, after the returns were prepared, filed with the IRS false tax returns showing fake payroll and other information in an attempt to falsely support the previously filed PPP loan applications on behalf of entities he controlled.

e.    In response to the Grand Jury subpoena of AHOD served on July 1, 2020, COLAR caused on August 3, 2020, the submission of false documents to the Government and the Grand Jury, including but not limited to, a Form 990-EZ, Return of Organization From Income Tax for the year 2019, and a California Exempt Organization Annual Information Return for the year 2019.

f.    After learning on July 1, 2020 of the Grand Jury investigation, COLAR caused the submission of false documents to the Social Security Administration, namely false W-2s in the names of the individuals listed on the fake payroll documents that he had submitted in support of the PPP loan applications on behalf of AHOD.

g.    After learning on July 1, 2020 of the Grand Jury investigation, COLAR mailed false Forms 941s, Employer's Quarterly Federal Tax Returns, and false Forms 941-Xs, Adjusted Employer's Quarterly Federal Tax Returns or Claims for Refund, on behalf of AHOD to the Internal Revenue Service in an effort to obstruct the investigation.

h.    Aware of the Grand Jury investigation, COLAR and BEY tampered with witnesses in various ways to prevent or discourage their Grand Jury testimony and to encourage them to give false Grand Jury testimony including by falsely inducing a doctor by fraud to produce an unsubstantiated note excluding the witness's appearance before the Grand Jury, actively concealing the witness while he was subject to a material witness order to appear and testify

29

issued by a judge of the Northern District of California, and by coaching that witness on what to say if the witness appeared to testify in the Grand Jury proceedings.

All in violation of Title 18, United States Code, Section 1512(c)(2).

COUNT THIRTY-EIGHT:   18 U.S.C. § 2232(a) (Destruction or Removal of Property to Prevent Search or Seizure)

108.   On or about July 1, 2020, in the Northern District of California, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

before and during the search for and seizure of property by agents of the Federal Bureau of Investigation and the Office of Inspector General for the Board of Governors of the Federal Reserve System and the Consumer Financial Protection Bureau, persons authorized to make such search and seizure, did knowingly attempt to destroy, damage, waste, dispose of, and transfer documents, for the purpose of preventing and impairing the Government's lawful authority to take such property into its custody and control.

All in violation of Title 18, United States Code, Section 2232(a).

COUNT THIRTY-NINE:   18 U.S.C. § 1519 (Destruction, Alteration, or Falsification of Records in Federal Investigations)

109.   The factual allegations in Paragraphs 1 through 47, 59 through 90, and 107 are re-alleged and incorporated as if fully set forth here.

110.   On or about July 27, 2020, in the Northern District of California, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

knowingly altered, destroyed, concealed, and falsified a record, document, and tangible object, specifically Form W-2s for the alleged employees of AHOD, with the intent to impede, obstruct, and influence an actual and contemplated investigation of a matter within the jurisdiction of any department and agency of the United States, namely the Federal Bureau of Investigation and the Office of Inspector

30

General for the Board of Governors of the Federal Reserve System and the Consumer Financial Protection Bureau.

All in violation of Title 18, United States Code, Section 1519.

COUNT FORTY:   18 U.S.C. § 1519 (Destruction, Alteration, or Falsification of Records in Federal Investigations)

111.   The factual allegations in Paragraphs 1 through 47, 59 through 90, and 107 are re-alleged and incorporated as if fully set forth here.

112.   On or about July 28, 2020, in the Northern District of California, the defendant

> ATTILA COLAR,
> a/k/a DAHOOD SHARIEFF BEY,
> a/k/a SHARIEFF DAHOOD BEY,
> a/k/a SHARIEFF PASHA,
> a/k/a DAVID LEE, and
> a/k/a GEORGI PETRAKOV,

knowingly falsified a record, document and tangible object, specifically on behalf of AHOD a Form 990-EZ, Return of Organization From Income Tax for the year 2019, and a California Exempt Organization Annual Information Return for the year 2019, with the intent to impede, obstruct, and influence an actual and contemplated investigation of a matter within the jurisdiction of any department and agency of the United States, namely the Federal Bureau of Investigation and the Office of Inspector General for the Board of Governors of the Federal Reserve System and the Consumer Financial Protection Bureau.

All in violation of Title 18, United States Code, Section 1519.

COUNT FORTY-ONE:   26 U.S.C. § 7206(1) (Making and Subscribing a False Return, Statement, or Other Document)

113.   The factual allegations in Paragraphs 1 through 47, 59 through 90, and 107 are re-alleged and incorporated as if fully set forth here.

114.   On or about July 27, 2020, in the Northern District of California, the defendant

> ATTILA COLAR,
> a/k/a DAHOOD SHARIFF BEY,
> a/k/a SHARIEFF DAHOOD BEY,
> a/k/a SHARIEFF PASHA,
> a/k/a DAVID LEE, and
> a/k/a GEORGI PETRAKOV,

31

did willfully make and subscribe a false Form 941 for 2019, Employer's Quarterly Federal Tax Return, which was verified by a written declaration that it was made under the penalties of perjury and which COLAR knew was not true and correct as to every material matter. That Form 941 for 2019, Employer's Quarterly Federal Tax Return, which was filed with the Director, Internal Revenue Service Center, at Ogden, Utah, stated that AHOD paid wages in the amount of $1,164,146.61 for the third quarter of 2019, when, as he then and there knew, no such wages of that amount were paid.

All in violation of Title 26, United States Code, Section 7206(1).

COUNT FORTY-TWO:     26 U.S.C. § 7206(1) (Making and Subscribing a False Return, Statement, or Other Document)

115.   The factual allegations in Paragraphs 1 through 47, 59 through 90, and 107 are re-alleged and incorporated as if fully set forth here.

116.   On or about July 27, 2020, in the Northern District of California, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

did willfully make and subscribe a false Form 941 for 2019, Employer's Quarterly Federal Tax Return, which was verified by a written declaration that it was made under the penalties of perjury and which COLAR knew was not true and correct as to every material matter. That Form 941 for 2019, Employer's Quarterly Federal Tax Return, which was filed with the Director, Internal Revenue Service Center, at Ogden, Utah, stated that AHOD paid wages in the amount of $2,330,705.10 for the fourth quarter of 2019, when, as he then and there knew, no such wages of that amount were paid.

All in violation of Title 26, United States Code, Section 7206(1).

COUNT FORTY-THREE:     26 U.S.C. § 7206(1) (Making and Subscribing a False Return, Statement, or Other Document)

117.   The factual allegations in Paragraphs 1 through 47, 59 through 90, and 107 are re-alleged and incorporated as if fully set forth here.

118.   On or about July 27, 2020, in the Northern District of California, the defendant

32

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

did willfully make and subscribe a false Form 941 for 2020, Employer's Quarterly Federal Tax Return, which was verified by a written declaration that it was made under the penalties of perjury and which COLAR knew was not true and correct as to every material matter.  That Form 941 for 2019, Employer's Quarterly Federal Tax Return, which was filed with the Director, Internal Revenue Service Center, at Ogden, Utah, stated that AHOD paid wages in the amount of $2,330,705.10 for the first quarter of 2020, when, as he then and there knew, no such wages of that amount were paid.

All in violation of Title 26, United States Code, Section 7206(1).

COUNT FORTY-FOUR:     26 U.S.C. § 7206(1) (Making and Subscribing a False Return, Statement, or Other Document)

119.    The factual allegations in Paragraphs 1 through 47, 59 through 90, and 107 are re-alleged and incorporated as if fully set forth here.

120.    On or about August 26, 2020, in the Northern District of California, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

did willfully make and subscribe a false Form 941-X, Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund, which was verified by a written declaration that it was made under the penalties of perjury and which COLAR knew was not true and correct as to every material matter.  That Form 941-X, Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund, which was filed with the Director, Internal Revenue Service Center, at Ogden, Utah, stated that AHOD paid wages in the amount of $1,164,146.61 for the third quarter of 2019, when as he then and there knew no such wages of that amount were paid.

All in violation of Title 26, United States Code, Section 7206(1).

33

COUNT FORTY-FIVE:          26 U.S.C. § 7206(1) (Making and Subscribing a False Return, Statement, or Other Document)

121.    The factual allegations in Paragraphs 1 through 47, 59 through 90, and 107 are re-alleged and incorporated as if fully set forth here.

122.    On or about August 26, 2020, in the Northern District of California, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

did willfully make and subscribe a false Form 941-X, Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund, which was verified by a written declaration that it was made under the penalties of perjury and which COLAR knew was not true and correct as to every material matter. That Form 941-X, Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund, which was filed with the Director, Internal Revenue Service Center, at Ogden, Utah, stated that AHOD paid wages in the amount of $2,330,705.10 for the fourth quarter of 2019, when, as he then and there knew, no such wages of that amount were paid.

All in violation of Title 26, United States Code, Section 7206(1).

COUNT FORTY-SIX:          26 U.S.C. § 7206(1) (Making and Subscribing a False Return, Statement, or Other Document)

123.    The factual allegations in Paragraphs 1 through 47 and 59 through 90, and 107 are re-alleged and incorporated as if fully set forth here.

124.    On or about August 26, 2020, in the Northern District of California, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

did willfully make and subscribe a false Form 941-X, Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund, which was verified by a written declaration that it was made under the

34

penalties of perjury and which COLAR knew was not true and correct as to every material matter. That Form 941-X, Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund, which was filed with the Director, Internal Revenue Service Center, at Ogden, Utah, stated that AHOD paid wages in the amount of $2,330,705.10 for the first quarter of 2020, when, as he then and there knew, no such wages of that amount were paid.

All in violation of Title 26, United States Code, Section 7206(1).

COUNT FORTY-SEVEN:   18 U.S.C. § 1512(k) (Conspiracy to Tamper with a Witness)

125.   The factual allegations in Paragraphs 1 through 47 and 59 through 90, and 107 are re-alleged and incorporated as if fully set forth here.

126.   Beginning in or about July 2020, and continuing until at least on or about February 15, 2022, in the Northern District of California, and elsewhere, the defendants,

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

and

JAMEELAH BEY,
a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD,
a/k/a CANTINA WILSON, and
a/k/a STEPHANIE CHERIPKA,

and others known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, and agree with other persons to use and attempt to use intimidation, threats, and corrupt persuasion of any person with the intent to (1) influence, delay, and prevent M.B. from testifying in an official proceeding, that is, the pending Grand Jury investigation of COLAR and BEY, in violation of 18 U.S.C. § 1512(b)(1), and (2) cause and induce M.B. to withhold testimony from the aforementioned official proceeding, evade legal process summoning M.B. to appear as a witness and to produce a record, document, and other object, in the aforementioned official proceeding, and be absent from the aforementioned official proceeding to which M.B. had been summoned by legal process, in violation of 18 U.S.C. § 1512(b)(2).

35

All in violation of Title 18, United States Code, Section 1512(k).

COUNT FORTY-EIGHT:   18 U.S.C. §§ 1512(b)(1) and 2 (Tampering with a Witness and Aiding and Abetting)

127.   The factual allegations in Paragraphs 1 through 47, 59 through 90, and 107 are re-alleged and incorporated as if fully set forth here.

128.   On or about September 28, 2021, in the Northern District of California, and elsewhere, the defendants,

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

and

JAMEELAH BEY,
a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD,
a/k/a CANTINA WILSON, and
a/k/a STEPHANIE CHERIPKA,

did knowingly and corruptly use intimidation, threats, and corrupt persuasion towards another person, and attempt to do so, and engaged in misleading conduct toward another person, and attempt to do so, with the intent to influence, delay, and prevent the testimony of a person, M.B., in an official proceeding, namely the pending Grand Jury investigation of COLAR and BEY, by having a doctor's letter transmitted to the United States Attorney's Office with the intent to influence, delay, and prevent M.B. from testifying in the aforementioned official proceeding

All in violation of Title 18, United States Code, Section 1512(b)(1).

COUNT FORTY-NINE:   18 U.S.C. §§ 1512(b)(2)(D) and 2 (Tampering with a Witness and Aiding and Abetting)

129.   The factual allegations in Paragraphs 1 through 47 and 59 through 90, and 107 are re-alleged and incorporated as if fully set forth here.

130.   On or about November 30, 2021, and continuing until on or about February 15, 2022, in the Northern District of California, and elsewhere, the defendants,

36

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

and

JAMEELAH BEY,
a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD,
a/k/a CANTINA WILSON, and
a/k/a STEPHANIE CHERIPKA,

did knowingly and corruptly use intimidation, threats, and corrupt persuasion towards another person, and attempt to do so, and engaged in misleading conduct toward another person, and attempt to do so with the intent to influence, delay, and prevent the testimony of M.B. in an official proceeding to which he had been summoned by legal process, that is, the pending Grand Jury investigation of COLAR and BEY.

All in violation of Title 18, United States Code, Section 1512(b)(2).

ADDITIONAL SENTENCING ALLEGATION

[18 U.S.C. § 3147]

131.   At the time of the offenses charged in Counts Fourteen, Twenty-Eight, Thirty-Three, Thirty-Seven, Forty-Seven, Forty-Eight, and Forty-Nine of this Indictment, the defendant

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a/ DAVID LEE, and
a/k/a GEORGI PETRAKOV,

was released under Title 18, United States Code, Section 3142, in the criminal case *United States v. Attila Colar*, 20-mag-70667, United States District Court for the Northern District of California.

FORFEITURE ALLEGATION:  18 U.S.C. § 982(a)(1)(C) and 28 U.S.C. § 2461(c)

132.   The allegations contained in this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

37

133.     Upon conviction for any of the offenses set forth in Counts One through Nine, and Seventeen through Twenty-Eight of this Indictment, the defendants,

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

and

JAMEELAH BEY,
a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD,
a/k/a CANTINA WILSON, and
a/k/a STEPHANIE CHERIPKA,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations, including but not limited to a forfeiture money judgment and the following specific property: $1,113,100 seized from a US Bank business checking account ending in -0770.

134.     Upon conviction for any of the offenses set forth in Counts Fifteen through Twenty Eight, and Thirty Four and Thirty Five of this Indictment, the defendants,

ATTILA COLAR,
a/k/a DAHOOD SHARIEFF BEY,
a/k/a SHARIEFF DAHOOD BEY,
a/k/a SHARIEFF PASHA,
a/k/a DAVID LEE, and
a/k/a GEORGI PETRAKOV,

and

JAMEELAH BEY,
a/k/a JAMEELAH MUHAMMAD BEY,
a/k/a JAMEELAH AASMA MUHAMMAD,
a/k/a CANTINA WILSON, and
a/k/a STEPHANIE CHERIPKA,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations, including but not limited to a forfeiture money judgment.

38

The allegations contained in the sole count of this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c).

135. Upon conviction of the offense set forth in Count Thirty-Six this Indictment, the defendant

ATTILA COLAR,<br>
a/k/a DAHOOD SHARIEFF BEY,<br>
a/k/a SHARIEFF DAHOOD BEY,<br>
a/k/a SHARIEFF PASHA,<br>
a/k/a DAVID LEE, and<br>
a/k/a GEORGI PETRAKOV,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), any firearm and ammunition involved in the commission of the offense, including, but not limited to, the following property:

a. one Glock, model 23 .40 caliber pistol seized on July 1, 2020;

b. one Smith & Wesson .32 caliber revolver bearing serial number 280583 seized on July 1, 2020;

c. 20 rounds of .40 caliber Smith & Wesson ammunition seized on July 1, 2020;

d. 3 rounds of 7.65mm GECO ammunition seized on July 1, 2020; and

e. 1 round of .32 Remington-Peters ammunition seized on July 1, 2020.

136. If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

39

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

DATED: April 5, 2022                                        A TRUE BILL.


                                                           /s/
                                                           _____
                                                           FOREPERSON

STEPHANIE M. HINDS
United States Attorney

*Barbara J Valliere*
BARBARA J. VALLIERE
ADAM A. REEVES
Assistant United States Attorneys